CHARLES CLIFTON, CLAIMANT, PLAINTIFF IN ERROR, v. THE UNITED STATES.

Upon the trial of a cause where goods had been seized upon suspicion of being fraudulently imported, and the United States had shown sufficient ground for an opinion of the court that probable cause existed for the prosecution, and notice had been given to the claimant to produce his books and accounts relating to those goods, it was proper for the court to instruct the jury, that, if the claimant had withheld the testimony of his accounts and transactions with the parties abroad from whom he received the goods, they were at liberty to presume that, if produced, they would have operated unfavorably to his cause.

The doctrine laid down in 2 Evans's Pothier, 149, cited and approved, namely,
" That if the weaker and less satisfactory evidence is given and relied on in support of a fact, when it is apparent to the court and jury that proof of a more direct and explicit character was within the power of the party, the same caution which rejects the secondary evidence will awaken distrust and suspicion of the weaker and less satisfactory, and it may well be presumed, that if the more perfect exposition had been given, it would have laid open deficiences and objections which the more obscure and uncertain testimony was intended to conceal."

The principle established in the case of Wood v. The United States (16 Peters, 342) reviewed and confirmed, namely, — " That if goods are fraudulently invoiced, they are not exempted from forfeiture by having been appraised in the custom-house at valuations exceeding the prices in the invoices, and delivered to the importers on payment of the duties assessed upon such increased valuations."

If the information contains several counts, founded on the following acts, namely, the sixy-sixth section of the act of 1799, the fourth section of the act of 1830, and the fourteenth section of the act of 1832, the defectiveness of the counts upon the acts of 1830 and 1832 would be no ground for reversing a judgment of condemnation, provided the count is good which is founded upon the act of 1799; because one good count is sufficient to uphold a general verdict and judgment.

The difference between these sections explained.

In this case, therefore, it is unnecessary to decide what averments are required in counts resting upon the acts of 1830 and 1832, or whether the counts are or are not void from generality.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for East Pennsylvania.

The facts are fully set forth in the opinion of the court.

The case was argued by *Mr. Meredith*, for the plaintiff in er-

ror, and *Mr. Cadwallader* and *Mr. Mason* (Attorney-General), for the United States.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error from the judgment of the Circuit Court for the Eastern District of Pennsylvania, affirming a judgment of the District Court of the same district.

The original suit was a libel of information, *in rem*, founded upon a seizure on land in the said district of some seventy-one cases of cloths and cassimeres imported into the United States, and alleged to have been forfeited.

The libel contained thirteen counts, resting upon different sections of the several acts of Congress regulating the collection of duties on imports and tonnage; but it will be material to notice particularly those only which are founded upon the sixty-sixth section of the act of 1799 (ch. 22, Lit. & Brown's ed.), the fourth section of the act of 1830 (ch. 147), and the fourteenth section of the act of 1832 (ch. 227), which provide against the making up of false invoices and false packages of the goods imported, with the intent to evade or defraud the revenue.

Various pleas were put in by the claimant, but as no questions are raised upon them, they need not be stated.

On the trial of the cause, it appeared that the goods in question had been originally imported into the port of New York, and were there duly entered and landed; and the duties paid upon the invoices produced by the claimant to the collector. The goods were appraised at the custom-house, at a valuation of ten per cent. above the invoice prices, and no appeal taken. They were afterwards transported to the city of Philadelphia, and were there seized by the custom-house officers, under a warrant issued for that purpose, in the stores of certain persons having the custody of them in that city for the claimant.

A good deal of evidence was given on the part of the United States, tending strongly to establish the fact, that the several invoices upon which the duties had been paid at the custom-house in New York, and which invoices were produced before the court, had been made up greatly under the actual cost and value of the goods in England, the place of exportation, and with the intent to evade and defraud the revenue; and in the progress of the trial, the counsel for the government, in pursuance of a notice given some months previously, called upon the claimant for the production of his ledger containing entries of each of the several invoices of the goods thus imported; also, for the production of his cash-book for the years 1838 and 1839, embracing the period within which the goods had been imported, and for the entries therein relating to the said importations; also, for the charges of the payment of freight upon said goods; — to each of which

calls the counsel were answered, that the claimant had no such book in court.

The counsel for the government, like previous notice having been given, also called upon claimant for the production of the accounts in the ledger, for the years 1838 and 1839, with each of the houses in England who had sold and invoiced the said goods to him, and for his letter-book for said years, and the correspondence with each of the said houses respectively, and also for his day-book; to which calls the counsel answered, that neither of them were in court.

When the testimony closed, the court below instructed the jury that it was alleged, on the part of the United States, that the goods in question had been forfeited, from having been imported into New York by false invoices, with intent to evade the payment of part of the duties to which they were subject. That it was incumbent upon the government to show upon the trial that there was probable cause for the prosecution; and if that had been shown, of which the court was to judge, the burden of proof was on the claimant, who must then satisfy the jury that the goods were invoiced at their actual cost.

That with a view to show probable cause, the government relied mainly upon the evidence, that the actual value of the goods in England exceeded the prices per yard mentioned in the invoices, and that after the testimony which had been produced on the part of the government of the value of the goods at the time and place of exportation, as compared with the prices fixed in the invoices, it was material to notice the negative evidence, arising out of the absence of testimony on the part of the defendant of the actual cost of the goods; and to consider whether its absence had been accounted for. That there was evidence that one of the persons, by whom a portion of the goods in controversy appeared to have been invoiced to the claimants, was within the reach of a subpœna, and it was reasonable to presume that it was in the claimant's power to have produced evidence of the real state of his accounts and transactions with all the parties in England from whom the goods had been received, as the correspondence showed that two years ago his counsel had advised him to procure proof on this subject, which had not been produced; that the claimant knew from whom he had bought the goods, and what their actual cost was, and yet he had not produced the evidence, nor accounted for its absence; that to withhold testimony which was in the power of a party to produce, in order to rebut a charge against him, where it was not supplied by equivalent testimony, might be as fatal as positive testimony in support or confirmation of the charge; that if the claimant had withheld proof which his accounts and transactions with these parties afforded, it might be presumed that if produced they would have operated unfavorably to his case; that the government

had shown probable cause, and that the next inquiry was, whether the claimant had relieved himself from the burden of the proof, &c.

The court further instructed the jury, that in respect to some of the invoices, the government and claimant relied upon the same circumstance, namely, that goods included in the information, in passing through the custom-house in New York, were appraised at amounts exceeding the invoice prices, and that the claimant, without appealing, had paid the duties assessed upon the increased value, and received the goods from the custom-house.

The counsel for the government contended that this acquiescence implied an admission that the invoices were untrue, while the counsel for the claimant contended, that by this appraisement, assessment, and payment of duty, the government were precluded from alleging or enforcing a forfeiture of these goods. The court expressed the opinion, that the question of liability to forfeiture was so far distinct from questions connected with the ascertainment and payment of duties, that the passing of goods through the custom-house, under such circumstances, was not, in a legal point of view, decisive of any question before the jury. That the question was, whether the goods were falsely invoiced, with intent to defraud the revenue, &c.

The counsel for the claimant excepted to that part of the charge in which the jury were instructed, that, if the claimant had withheld the testimony of his accounts and transactions with the parties abroad from whom he received the goods, they were at liberty to presume that, if produced, they would have operated unfavorably to his case ; and also to that part in which the jury were instructed, that, if the goods in controversy were fraudulently invoiced, they were not exempted from forfeiture by having been appraised in the custom-house at valuations exceeding the prices in the invoices, and delivered to the importer on payment of the duties assessed upon the amount of such appraisement ; and also to that part of the instructions in which the jury were advised that probable cause had been shown by the government in support of the prosecution.

A general verdict was rendered for the United States.

As to the instructions given to the jury first excepted to, in which the court below expressed the opinion, " that if the claimant had withheld proof which his accounts and transactions with the parties afforded, it might be presumed that, if produced, they would have operated unfavorably to his case " ; in order to comprehend fully the appropriateness and legality of the instructions, it is material to refer to the posture of the case at the time they were given, and to the question then under the consideration of the court.

The counsel for the government had furnished proof tending strongly to the conclusion, that the invoice prices of the goods in question were greatly under the actual cost at the place and in the

U *

country whence they were imported. This proof rested mainly upon the testimony of several merchants, importers, and dealers in the particular article, who had examined the goods and estimated their cost.

The average estimate exceeded the invoice prices some fifty per cent.

The counsel also, with a view of further strengthening their case, and in pursuance of previous notice for that purpose, called upon the claimant for the production of his books and papers containing an account of the several importations, and of his dealings in respect to them with the foreign houses, together with his and their correspondence concerning the same. Neither were produced, nor any account attempted to be given for the non-production.

Upon this the government rested. Probable cause for the prosecution having been thus sufficiently established, the claimant went into his defence ; and, instead of furnishing evidence of the prices actually paid by him to the houses abroad from whom the goods were purchased, as he might have done, either by executing a commission to take their testimony, or by persons concerned in making the purchases, or by the production of the books of account that had been called for, as the call afforded him an opportunity to put them in evidence, he placed the defence altogether upon the judgment and opinions of merchants and other persons acquainted with this description of goods, as to the value and cost of the article in the home market, tending thereby to confirm and support the correctness of the valuations as fixed in the invoices.

The burden of the case was upon the claimant, and it was in this stage and posture of it that the instructions were given which are the subject of the exception ; and in which the court stated, "that the claimant knew from whom he had bought the goods, and what was their actual cost, and yet had not produced this testimony, or accounted for its absence ; that to withhold testimony which it was in the power of the party to produce, in order to rebut a charge against him, where it is not supplied by other equivalent testimony, might be as fatal as positive testimony in support or confirmation of the charge. And that if the claimant had withheld testimony of his accounts and transactions with these parties (meaning the foreign houses from whom he had purchased the goods), the jury were at liberty to presume that, if produced, they would have operated unfavorably to his case."

The instructions had a direct reference to, and are to be construed as intended to bear upon, the matters of defence, probable cause having been shown ; and upon the nature and species of the evidence relied on by the claimant in support of it ; and in this aspect of the case, at least, without now referring to any other, we think they were not only quite pertinent to the question in hand,

but founded upon the well established rules and principles of evidence.

The prosecution involved in its result, not only the forfeiture of a considerable amount of property, but also the character of the claimant, both as a merchant and an individual. He was charged with a deliberate and systematic violation of the revenue laws of the country, by means of frauds and perjuries, and the court, as was its province, under the seventy-first section of the act of 1799, had pronounced the proof sufficient to establish the offence, unless explained and rebutted by opposing evidence.

Under these circumstances, the claimant was called upon by the strongest considerations, personal and legal, if innocent, to bring to the support of his defence the very best evidence that was in his possession, or under his control. This evidence was certainly within his reach, and probably in his counting-room, namely, the proof of the actual cost of the goods at the place of exportation. He not only neglected to furnish it, and contented himself with the weaker evidence, but even refused to furnish it on the call of the government; leaving, therefore, the obvious presumption to be turned against him, that the highest and best evidence going to the reality and truth of the transaction would not be favorable to the defence.

One of the general rules of evidence, of universal application, is, that the best evidence of disputed facts must be produced of which the nature of the case will admit. This rule, speaking technically, applies only to the distinction between primary and secondary evidence; but the reason assigned for the application of the rule in a technical sense is equally applicable, and is frequently applied, to the distinction between the higher and inferior degree of proof, speaking in a more general and enlarged sense of the terms, when tendered as evidence of a fact. The meaning of the rule is, not that courts require the strongest possible assurance of the matters in question; but that no evidence shall be admitted, which, from the nature of the case, supposes still greater evidence behind in the party's possession or power; because the absence of the primary evidence raises a presumption, that, if produced, it would give a complexion to the case at least unfavorable, if not directly adverse, to the interest of the party.

This is the reason given for exacting, in all cases, the primary evidence, unless satisfactorily accounted for. 1 Phillips on Ev. 218, C. & H.'s notes, 414, 418, and cases.

For a like reason, even in cases where the higher and inferior testimony cannot be resolved into primary and secondary evidence, technically, so as to compel the production of the higher; and the inferior is, therefore, admissible and competent without first accounting for the other, the same presumption exists in full force and effect against the party withholding the better evidence; es-

pecially when it appears, or has been shown, to be in his posses-sion or power, and must and should, in all cases, exercise no in-considerable influence in assigning to the inferior proof the degree of credit to which it is rightfully entitled.

It is well observed by Mr. Evans (2 Evans's Pothier, 149), in substance, that if the weaker and less satisfactory evidence is given and relied on in support of a fact, when it is apparent to the court and jury that proof of a more direct and explicit character was within the power of the party, the same caution which rejects the secondary evidence will awaken distrust and suspicion of the weaker and less satisfactory; and that it may well be presumed, if the more perfect exposition had been given it would have laid open deficiencies and objections which the more obscure and un-certain testimony was intended to conceal.

We will only add, that practical illustrations of this application of the rule are witnessed daily in the administration of justice in criminal cases, and are too familiar to every lawyer to require a more particular reference.

We are satisfied, therefore, that no error was committed by the court below in giving the instruction first excepted to.

The second exception was to that part of the charge in which the court instructed the jury, that, if the goods were fraudulently invoiced, they were not exempted from forfeiture by having been appraised in the custom-house at New York at valuations exceed-ing the prices in the invoices, and delivered to the importers on payment of the duties assessed upon the amount of such appraise-ment.

In respect to this instruction, it is only necessary to refer to the case of Wood *v.* The United States (16 Peters, 342), in which a similar one had been given, and came up for review, and the cor-rectness of which was affirmed by the court.

The third and last exception taken was to the instruction, that probable cause had been shown by the United States for the pros-ecution, which was virtually given up on the argument. There can be no doubt as to its correctness.

In addition to the foregoing exceptions, the counsel for the plaintiff in error insisted, on the argument, that the fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, and thirteenth counts in the information, all of which are founded upon the fourth section of the act of 1830 (ch. 147, Lit. & Brown's ed.), and the four-teenth section of the act of 1832 (ch. 227), were substantially defective, by reason of the generality and uncertainty of the aver-ments in each and every of the said counts; and that, for this reason, the judgment should be reversed.

It was not denied but that the fourth count, which is founded upon the sixty-sixth section of the act of 1799 (ch. 22), was good in form and substance, and sufficient, if it stood alone, to uphold

the recovery; but it was insisted, as the verdict and judgment were general upon all the counts in the information, that, if one or more were bad, an error existed upon the record for which the court was bound to reverse the judgment.

The sixty-sixth section of the act of 1799, vol. 1, p. 677 (Lit. & Brown's ed.), provides, "that if any goods, wares, or merchandise, of which an entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, &c., shall be forfeited."

The same section also provides for seizing the goods on suspicion of fraud, and detaining them for examination. This section condemns the goods to forfeiture in cases where they are invoiced below their actual cost at the place of exportation, with intent to defraud the revenue.

The fourth section of the act of 1830 provides, that the collector shall cause at least one package out of every invoice, and one package, at least, out of every twenty packages of each invoice, and a greater number if deemed necessary, of the goods imported, which package or packages he shall first designate on the invoice, to be opened and examined; and if the same be found not to correspond with the invoice, or to be falsely charged in such invoice, the collector shall order, forthwith, all the goods contained in the same entry to be inspected, and if subject to an *ad valorem* duty, the same shall be appraised; and *if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up with intent, by a false valuation, or extension, or otherwise, to evade or defraud the revenue, the same shall be forfeited.*

This section condemns the goods to forfeiture, —

1. If the package is found to contain any article not in the invoice; and,

2. If it shall be found that the package or invoice is made up with intent to defraud the revenue by a false valuation or otherwise.

The fourteenth section of the act of 1832 provides, that whenever, upon opening and an examination of any package or packages of imported goods, composed wholly or in part of wool or cotton, in the manner provided for by the fourth section of the act of 1830, the goods shall be found not to correspond with the entry at the custom-house, and the package shall be found to contain any article not entered, such article shall be forfeited; or if the package be made up with intent to evade or defraud the revenue, the package shall be forfeited, and so much of the said fourth section as prescribes a forfeiture of the goods found not to correspond with the invoice is repealed.

This section condemns to forfeiture, —

1. The article in the package which it is found does not correspond with the entry ; and,

2. The package which it is found has been made up with intent to defraud the revenue ; and,

3. Repeals that part of the fourth section in the act of 1830 which forfeits the package in which an article is found not corresponding with the invoice.

The fourth section of the act of 1830, and fourteenth of 1832, enlarge the grounds of forfeiture beyond the sixty-sixth section of the act of 1799 ; but the frauds provided against in those sections, and upon which the forfeiture proceeds, appear to be limited to cases where the detection takes place in the course of the examination at the custom-house.

The sixty-sixth section limits the forfeiture to the case of fraud in making up the invoice prices below the actual cost of the goods, but leaves the time and place of detection unrestricted. Under this section, whether the discovery of the fraud be made by the custom-house officers while the goods are passing inspection, or afterwards, is immaterial. In either case condemnation follows, as has already been held by this court in the case of Wood v. The United States (16 Peters, 342).

As already stated, it is not denied but that the condemnation is well supported under the count founded upon the sixty-sixth section ; but it is insisted, that all the counts founded upon the fourth section of the act of 1830, and the fourteenth of the act of 1832, are substantially defective for their generality and want of averments setting forth the special circumstance of the examination and detection of the fraud under the authority of the collectors. Whether this be so or not, it is unimportant to determine in this case, as it was held, at an early day, in this court, that one good count was sufficient to uphold a general verdict and judgment upon all the counts, though some of them might be bad, the information being regarded in the nature of a criminal proceeding. (Locke v. The United States, 7 Cranch, 339; 1 Johns. R. 320 ; Doug. 730 ; 8 Bac. Abr. 114.)

The same must have been virtually held in the cases of Wood v. The United States, already referred to, and Taylor and others v. The same (3 How. 197).

We will merely add, as to the sufficiency of the counts upon the fourth section of the act of 1830 and fourteenth section of 1832, that, by the sixty-sixth section of the act of 1799, the collector was authorized, in case he suspected fraud in the invoice prices, to seize the goods and detain them for examination as fully as is provided for in the two sections of the acts of 1830 and 1832. There is no substantial difference, in this respect, except that the latter makes it the duty of the collectors, in all cases, to direct an examination before the goods are allowed to pass through the custom-house, whereas

the sixty-sixth section left it as matter of discretion, depending upon suspicion of fraud in the invoices.

Upon the whole, we are satisfied that the judgment of the Circuit Court, affirming that of the District Court, is legal, upon all the grounds which have been urged against it, and should be affirmed.