## DIMMICK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 785.

1. UNITED STATES — PRESENTATION OF FALSE CLAIMS — CONSTRUCTION OF STATUTE.

To constitute a crime under Rev. St. § 5438, by presenting for payment a claim against the United States or a department thereof "knowing such claim to be false, fictitious, or fraudulent," it is not essential that the bill, voucher, or other thing used as the basis for the claim should in and of itself contain fraudulent or fictitious statements or entries, but whether the claim is genuine and honest, or false, fictitious, or fraudulent, must be determined in view of all the facts and circumstances surrounding it;. and the offense is committed by presenting for payment a claim originally valid, but which the person presenting it knows has been paid, and is no longer a subsisting and just demand, or one which, although valid, he knows he is not authorized to receive payment on.

2. CRIMINAL LAW—APPEAL—HARMLESS ERROR.

A judgment of conviction in a criminal case will not be reversed because of the admission of evidence which was clearly not prejudicial to defendant, although it may have been irrelevant.

3. SAME—EVIDENCE—ADMISSIONS.

Statements made by defendant to a witness, relating to the transaction charged as a crime, are not subject to the rules governing the admission of confessions, where defendant in such statements, while admitting the commission of the acts charged, denied their criminality and justified the same.

4. SAME—REVIEW ON APPEAL—SUFFICIENCY OF INDICTMENT.

A general verdict and judgment of conviction on an indictment containing several counts cannot be reversed on error on the ground of the insufficiency of the indictment, if any one of the counts is good and warrants the judgment.

¶ 4. See Indictment and Information, vol. 27, Cent. Dig. § 651.

In Error to the District Court of the United States for the Northern District of California.

For opinion below, see 112 Fed. 350.

Geo. D. Collins, for plaintiff in error.

Marshall B. Woodworth, for the United States.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The plaintiff in error was charged by indictment with the commission of certain crimes against the laws of the United States. The indictment contained four counts, on the first and fourth of which the jury impaneled to try the case returned a verdict of guilty, upon which a judgment sentencing him to imprisonment in the state prison was entered. The second and third counts of the indictment are eliminated from consideration by the verdict of not guilty in respect to the third and the action of the court below in sustaining a demurrer to the second count. The first count charged, in effect, that on the 7th day of April, 1900, at the city and county of San Francisco, Cal., Dimmick knowingly, unlawfully, and feloniously presented to W. K. Cole, who was then and there cashier of the mint of the United States at San Francisco, a certain claim for payment which Cole was authorized to pay, and which claim was for the sum of $498.37, for 4,997 pounds of sheet lead, and 1,911 pounds of lead pipe, which sheet lead and lead pipe had theretofore been purchased at San Francisco by the United States for its mint at that place from the Selby Smelting & Lead Company, a corporation, the particular items of which claim appear in a copy of the claim annexed to the indictment marked "Exhibit A" and made a part thereof, and which shows upon its face the items to have been bought by the United States mint at San Francisco of the Selby Smelting & Lead Company, aggregating in amount $498.37, and upon which claim appeared the following indorsements: "Paid, March 26th, 1900. Selby Smelting & Lead Company, per H. B. Underhill, Jr., Scy. Correct: Frank A. Leach, Superintendent."

The indictment in its first count alleges that the said claim at the time and place of its presentation for payment by Dimmick to Cole as such cashier was

—"False, fictitious, and fraudulent, in this: That the said claim had theretofore, on the twenty-sixth day of March, in the year of our Lord one thousand nine hundred, been wholly paid by the United States, and the articles set out in said claim had theretofore, to wit, on the said last-mentioned date, been fully paid for by the United States, and that at the time and place of making the said claim and presenting the same for payment the said claim was not due or owing by the United States to the Selby Smelting & Lead Company, or to any other person, and was not due or owing at all. That on the twenty-sixth day of March, in the year of our Lord one thousand nine hundred, the said Selby Smelting & Lead Company aforesaid had received from the United States of America the said sum of four hundred ninety-eight and thirty-seven one-hundredth ($498.37) dollars in full and complete payment of said claim, and for the articles set out therein. That the said Selby Smelting & Lead Company had no other or further charge or claim against the United States of America, or against the mint of the United States at San Francisco, state and Northern district aforesaid,

on account of said claim or of the sale of the articles therein set out. The said Walter N. Dimmick then and there, at the time and place of the presentation of said claim as aforesaid, well knew that said claim was false, fictitious, and fraudulent as aforesaid, and well knew that said claim had been paid on said twenty-sixth day of March, in the year of our Lord one thousand nine hundred, and then and there well knew that on the twenty-sixth day of March, in the year of our Lord one thousand nine hundred, the said Selby Smelting & Lead Company aforesaid had received from the United States of America the said sum of four hundred ninety-eight and thirty-seven ($498.37) one hundredth dollars in full and complete payment of said claim, and of the articles set out therein, and he then and there well knew that the said Selby Smelting & Lead Company had no other or further charge or claim against the United States or against the mint of the United States at San Francisco, state and Northern district aforesaid, on account of said claim or for the sale of the articles therein set out; and he, the said Walter N. Dimmick, intended then and there and thereby to defraud the United States of America."

The fourth count is as follows:

"That Walter N. Dimmick, late of the Northern district of California, heretofore, to wit, on the seventh day of April, in the year of our Lord one thousand nine hundred, and at divers other times from and including the said seventh day of April, in the year of our Lord one thousand nine hundred, to and including the thirtieth day of April, in the year of our Lord one thousand nine hundred, at the city and county of San Francisco, in the state and Northern district of California, then and there being, was then and there a clerk of the mint of the United States at San Francisco, state of California, in the district aforesaid, and was not an authorized depositary of public moneys. That the said Walter N. Dimmick, not being an authorized depositary of public moneys of the United States, then and there knowingly, unlawfully, willfully, and feloniously used a portion of the public moneys of the United States of America, to wit, the sum of four hundred ninety-eight and thirty-seven one hundredth ($498.37) dollars, lawful money of the United States of America, for a purpose not prescribed by law; that is to say, the said Walter N. Dimmick then and there used the said money for his own uses and purposes."

The first count of the indictment is based on section 5438 of the Revised Statutes, which, so far as applicable, is as follows:

"Every person who makes or causes to be made, or presents or causes to be presented for payment or approval to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * shall be imprisoned at hard labor not less than one nor more than five years, or fined not less than one nor more than five thousand dollars."

The fourth count was based upon section 5497 of the same Statutes, which reads as follows:

"Every banker, broker, or other person not an authorized depositary of public moneys, who knowingly receives from any disbursing officer or collector of internal revenue or other agent of the United States any public money on deposit or by way of loan or accommodation, with or without interest, or otherwise than in payment of a debt against the United States, or who uses, transfers, converts, appropriates, or applies any portion of the public money for any purpose not prescribed by law, and every president, cashier, teller, director, or other officer of any bank or banking association who violates any provision of this section, is guilty of an act of embezzlement of the public moneys so deposited, loaned, transferred, used, converted, appropriated, or applied, and shall be punished as. prescribed in section five thousand four hundred and eighty-eight."

The objections urged on the part of the plaintiff in error to the first count of the indictment, and to such of the evidence and to such parts of the charge of the court below to the jury as related to that count, are chiefly based upon the proposition that in order to constitute the false, fictitious, or fraudulent claim referred to in section 5438 of the Revised Statutes it is essential that the bill, voucher, or other thing used as a basis of the claim should in and of itself contain some "fraudulent or fictitious statement or entry." "The test," says the counsel for the plaintiff in error, "of a 'false, fictitious, or fraudulent claim,' as suggested by the statute itself, is this: Is the bill, voucher, or claim used by the defendant to obtain the payment (in this case the document 'Exhibit A' attached to the indictment) a bill, voucher, or claim containing any 'fraudulent or fictitious statement or entry'? If not, then the claim is not within the terms of the statute, and the courts would be guilty of usurpation in placing it there by force of construction. In this case the prosecution concedes, and the indictment shows, that the claim, bill, and voucher, designated in the first count as 'Exhibit A,' does not, and never did, contain any 'fraudulent or fictitious statement or entry'; therefore we insist the case as presented by the first count is not within the statute."

We think there is nothing in this position of counsel for the plaintiff in error. The character of the claim—that is to say, whether true, genuine, and honest, or false, fictitious, and fraudulent—must be determined in view of all of the facts and circumstances attending it. If it be originally forged, or otherwise fraudulently concocted, its presentation for payment, with knowledge of the facts, must necessarily be fictitious and fraudulent. Every whit as much so is a similar demand based upon a claim originally valid, but which the party presenting the claim knows has theretofore been paid, and is no longer a subsisting, honest, and just demand, or which he knows he is wholly unauthorized to present and demand or receive any money on. The contention that in presenting the claim in question to the cashier of the mint, and receiving thereon $498.37 of the government's money, the plaintiff in error was only collecting an unpaid and just bill of the Selby Company, for the reason that the settlement and satisfaction of its bill by the satisfaction of a bill of the mint against the Selby Company for a precisely similar amount is based upon the theory that the mint superintendent was without authority to make or allow such a set-off, and that as a consequence the settlement was void and the indebtedness continued to exist. But if the parties to a settlement are satisfied, who has the right to complain? The case shows that the Selby Company was content with it, acknowledging full satisfaction of its claim against the government, and, so far from the latter questioning the authority of its mint superintendent, it instituted this prosecution against the plaintiff in error for obtaining money from its vaults upon the pretense that the amount of the Selby Company's claim was still due. The suggestion that a stranger to both parties to a settlement can justify his unauthorized and illegal taking of the money of one of them, by saying that the settlement of the parties in interest was nevertheless void, is,

to say the least, entirely devoid of merit. If it be conceded that the superintendent of the mint was not authorized to pay the Selby Company's bill by crediting that company with a precisely similar amount due by it to the mint, and that the claim of the company remained a subsisting, valid claim against the United States, it constituted no true, genuine, or honest claim of the plaintiff in error, or of any other stranger to the smelting company, but was, as a basis of any demand by such unauthorized person upon the United States, in the strictest sense false, fictitious, and fraudulent.

A case quite similar in principle was before Judge Drummond in U. S. v. Coggin (C. C.) 3 Fed. 492, 9 Biss. 416. Coggin had been a soldier in the Civil War, and, claiming to have been wounded at the battle of Corinth, on the 4th day of October, 1862, had, by false and fraudulent. evidence, procured his name to be entered on the pension roll at Washington for a pension, receiving the usual certificate that he was a pensioner entitled to a pension from the United States, payable at the pension office at Milwaukee. At the time of the indictment against him, which was based upon section 5438 of the Revised Statutes, the statute of limitations had run against the offense committed by him in procuring his name to be so entered upon the pension roll, but he presented the certificate that had been issued to him to the pension agent at Milwaukee, at a time within that limited by the statute of limitations, prior to the finding of the bill of indictment against him, and obtained money from the United States thereon. It was alleged in the indictment against him that the grounds upon which his application for a pension was sustained before the commissioner of pensions, and his name entered upon the list of pensioners, and his certificate issued, were all false, fictitious, and fraudulent; that, in point of fact, he was not injured at all at the battle of Corinth in any way, and was consequently not entitled to a pension from the United States; and that the claim made on the pension agency at Milwaukee for a pension, and for money which he received, was a false claim. One of the questions presented to and determined by the court there was whether what was alleged to have been done by the defendant constituted a presentment of a false claim to or against the United States for the payment of money, within the meaning of section 5438 of the Revised Statutes, and in considering that question the court said:

"In this case it was not the entry upon the pension roll nor the certificate issued that was false or fraudulent. That was all genuine and authentic. The certificate issued was a genuine, true certificate, declaring that the defendant was entitled to a pension, but the claim was fraudulent. That certificate had been obtained, according to the indictment, by fraud, and when it was presented, as the indictment alleges it was, to the pension agent at Milwaukee, it constituted a false and fraudulent claim against the United States, and upon that false and fraudulent claim he obtained money, although the certificate was genuine. And that this was the meaning of the statute there can be no doubt, because immediately following the clause of the statute already referred to is the case of a person who presents a fraudulent or false certificate, or who for the purpose of obtaining, or aiding to obtain, the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement

or entry. So that the two classes of offense are distinct and separate, one speaking of a false claim in itself knowing the claim to be false, and another a false certificate knowing it to be false. So I hold that although the fraud in obtaining the entry of the name of the defendant upon the pension roll and the issuance of the certificate were within the statute of limitations, and so, if the offense were confined to that, it could be successfully made, yet every time the defendant made a claim upon that genuine certificate, his name being entered upon the pension roll, he committed one of the offenses described in the statute, namely, he presented a claim to the government for payment which was false and fraudulent, and which he knew, according to the language of the indictment, to be false and fraudulent. Therefore it was a presentation of a false and fraudulent claim, within the meaning of the statute, and, if he knew it to be false and fraudulent, that completed the offense."

On the trial the government was permitted to introduce in evidence, over the objections of the plaintiff in error and against his exceptions, not only the exhibit annexed to and made a part of the indictment, but certain other exhibits designated as United States exhibits No. 2, No. 3, No. 4, and No. 5, and the action of the trial court in those respects is assigned as error. It appeared from the testimony of the witness Theodore Gray, who was at the time of the transactions in question in the employ of the Selby Smelting & Lead Company and in charge of its books of account, as well as from the testimony of Mr. Leach, the superintendent of the mint, that the Selby Company had furnished to the mint certain sheet lead and lead pipe, aggregating, less the usual discount of 2 per cent., the sum of $636.05, for which amount the Selby Company made out and sent to the mint a bill which is United States Exhibit No. 5, above referred to. At the same time the Selby Company was indebted to the mint for material it had received therefrom in the sum of $498.37, which the superintendent of the mint desired to offset, so far as it would go, against the Selby Company's bill for $636.05, and so notified Dimmick, the chief clerk of the mint. Dimmick, upon looking into the Selby Company's bill for $636.05, discovered that certain of its items aggregated the precise sum of $498.37, and returned the bill to the Selby Company with a pencil memorandum annexed thereto, requesting that company to segregate its bill, putting in one portion those items thereof aggregating $498.37, and a separate bill for the remaining $137.68, which was accordingly done, and which separate bills are the aforesaid United States Exhibits A and No. 2, respectively. Exhibit No. 4 is as follows:

"The Mint of the United States at San Francisco, Superintendent's Office.
"March 27th, 1900.

"Received of the Selby Smelting and Lead Company, sheet lead and pipe as per invoice of March 13th, 1900, to the value of $498.37 (being $508.54 less $10.17 cash discount), in full settlement for exchange of old lead.
"[Signed]                    Frank A. Leach, Supt. U. S. Mint."

It needs no argument to show that these exhibits were relevant, pertinent to, and illustrative of the testimony of the witnesses Gray and Leach, and that the court below committed no error in admitting them in evidence. United States Exhibit No. 3 is a bill of the Selby Smelting & Lead Company against the mint for certain lead and lead pipe aggregating, less the usual discount of 2 per cent., the sum

of $108.99. We do not perceive its relevancy to the case, but are unable to see how it could possibly have injured the plaintiff in error. Harmless errors do not justify the reversal of a judgment.

During the examination of Mr. Leach he spoke of a conversation had in his office in the mint, on the 5th day of February, 1901, with the plaintiff in error, at which no one else was present, and, said the witness, "in that conversation we referred to this voucher" (the bill of the Selby Company for $498.37). The government's attorney then asked the witness, "Will you kindly relate to the jury that conversation, what you said, and what Mr. Dimmick said?" to which counsel for the plaintiff in error objected as "irrelevant and incompetent and no foundation laid for it." The court overruled the objection, to which ruling exception was taken. The witness answered as follows:

"There was considerable conversation preceding the talk immediately in reference to this matter which is not embodied in the charges before the court at this time, and when I referred to the use of this voucher I asked Mr. Dimmick how he justified his use of that voucher. He said, in substance,—I would not undertake to repeat his exact language,—as near as I remember: 'Mr. Leach, I do not think there was anything improper in my use of that. It was not for my own behalf. It was for the accommodation of the government. You know on the last day of the quarter I am required to deposit all of the moneys that come into my hands for the sale of all old materials and by-products, and that quarter came on Saturday, which was March 31st. The end of the quarter came on Saturday, which you know was a short business day, and I sold some bluestone to the Selby Smelting & Lead Company on that day, and did not have time to go down and collect the money, and I happened to see this voucher lying on my desk,' or 'thought of this voucher, and I went into the cashier's office and raised the money on it,' or 'collected the money on it, and used the proceeds to make good this deposit that I was required to make with the subtreasury on that day.' And he said that he intended to collect the money in the afternoon, and take up the voucher on the following Monday. I asked him why he did not take up the voucher on the following Monday; why he let it go till April 30th. He said, 'You remember I was taken sick on the following Monday, and was not able to get out of bed for some time thereafter.' Those statements appeared to me to be true at that time. I remembered about his illness, and looked at the diary, and saw it was true about the last day of the quarter coming on Saturday."

It is now insisted by the plaintiff in error that the question called for a confession by him, without any showing on the part of the prosecution that his alleged statements were voluntarily made. The answer to this is that it not only did not appear from the question that any confession was sought, but also that in the statement testified to the defendant, so far from making a confession of his guilt, attempted to show to the witness his innocence, and that fact may have been the reason why his counsel did not move to strike out the answer upon the ground now urged by him. At all events, so far as the record shows, there was no such motion.

The other objections of the plaintiff in error to the rulings of the trial court in respect to the admission of testimony relate to the charge embodied in the fourth count of the indictment, the validity of which is, among other things, called in question by the plaintiff in error. As the first count, and the verdict of guilty returned upon it, is sufficient to support the judgment and sentence, the question of

the sufficiency of the fourth count, and the validity of the proceedings thereunder, need not be considered. In Claasen v. U. S., 142 U. S. 140, 146, 12 Sup. Ct. 169, 170, 35 L. Ed. 966, the supreme court said:

"In criminal cases the general rule, as stated by Lord Mansfield before the Declaration of Independence, is 'that if there is any one count to support the verdict it shall stand good, notwithstanding all the rest are bad.' Peake v. Oldham, Cowp. 275, 276; Rex v. Benfield, 980, 985. See, also, Grant v. Astle, 2 Doug. 722, 730. And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only. Locke v. U. S., 7 Cranch, 339, 344, 3 L. Ed. 364; Clifton v. Same, 4 How. 242, 250, 11 L. Ed. 957; Snyder v. Same, 112 U. S. 216, 5 Sup. Ct. 118, 28 L. Ed. 697; Bond v. Dustin, 112 U. S. 604, 609, 5 Sup. Ct. 296, 28 L. Ed. 835; 1 Bish. Cr. Proc. § 1015; Whart. Cr. Pl. & Prac, § 771. The opposing decision of the house of lords in 1844, in the well-known case of O'Connell v. Reg., was carried, as appears by the report in 11 Clark & F. 155, by the votes of Lord Denman, Lord Cottenham, and Lord Campbell against the votes of Lord Lyndhurst and Lord Brougham, as well as against the opinions of a large majority of the judges consulted, and the universal understanding and practice of the courts and the profession in England before that decision. It has seldom, if ever, been followed in the United States."

The evidence in the present case is amply sufficient to sustain the verdict of the jury upon the first count. There was no variance between the proof and the averments of that count, as contended by the counsel for the plaintiff in error. It is a mistake to say, as does the counsel, that it is alleged that the bill of the Selby Company was paid in money. Under the averments of the indictment, it was immaterial whether it was paid in money or something else.

Numerous exceptions were taken by counsel to the refusal of the court below to give requested instructions and to various portions of the court's charge. A very careful and attentive perusal of the charge satisfies us that in no respect was the plaintiff in error prejudiced thereby. Every instruction requested by him, to which he was entitled, was embodied, in substance, in the charge of the court, and there was nothing said therein to which he could justly object. The judgment is affirmed.