## UNITED STATES v. REGAN.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

### No. 95.

ALIENS (§ 58*)—CONTRACT LABORER—ASSISTING IN IMPORTATION—ACTION FOR PENALTY—PROOF REQUIRED.

Act Cong. Feb. 20, 1907, c. 1134, §§ 4, 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), make it a misdemeanor for any person to assist in the importation of a contract laborer, and declare that for every violation of such provision the violating party shall forfeit $1,000, which may be sued for and recovered by the United States as debts of like amount are recovered in the courts of the United States. *Held* that, though an action to recover such penalty is a civil action, the offense being a misdemeanor, the government, when suing only for the penalty, is bound to satisfy the jury of defendant's guilt beyond a reasonable doubt.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*

Importation of contract labor, see note to United States v. Parsons, 66 C. C. A. 133.]

In Error to the District Court of the United States for the Southern District of New York; James L. Martin, Judge.

Action by the United States against James B. Regan. Judgment for defendant, and the United States brings error. Affirmed.

Henry A. Wise and A. S. Pratt, Asst. U. S. Atty., both of New York City.

Max D. Steuer and J. A. Leve, both of New York City, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The United States brought this action of debt against James B. Regan, proprietor of the Knickerbocker Hotel, New York, to recover a penalty of $1,000 for assisting the importation of a contract laborer, viz., one Foreau, a citizen of France, to be employed as a pastry cook in the hotel, under sections 4 and 5 of the act of February 20, 1907 (34 Stat. 900, c. 1134 [U. S. Comp. St. Supp. 1911, p. 503]), which read:

"Sec. 4. (Importing contract labor a misdemeanor.) That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this act.

"Sec. 5. (Penalty for violations—Suits by informer.) That for every violation of any of the provisions of section four of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered

in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States."

At a former trial a judgment for the government was reversed and the case sent back for a new trial. In the opinion then handed down we held, among other things, that the evidence offered by the government must satisfy the jury beyond a reasonable doubt that the defendant was guilty of the offense charged. 183 Fed. 293, 105 C. C. A. 505, 31 L. R. A. (N. S.) 1073. Upon this trial the court so charged, and the jury rendered a verdict for the defendant. The government seeks to raise this question again on the ground that the action is a civil action, and in respect to procedure and proof is to be treated as such (United States v. Zucker, 161 U. S. 475, 16 Sup. Ct. 641, 40 L. Ed. 777; Hepner v. United States, 213 U. S. 103, 29 Sup. Ct. 474, 53 L. Ed. 720, 27 L. R. A. [N. S.] 739, 16 Ann. Cas. 960), although it is admitted the defendant is protected by constitutional guaranties; e. g., that of the fourth amendment, securing the people "against unlawful searches and seizures" (Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746), and of the fifth amendment, that "no one shall be compelled in any criminal case to be a witness against himself" (Lees v. United States, 150 U. S. 476, 14 Sup. Ct. 163, 37 L. Ed. 1150). We remain of the opinion that under this act, which makes the offense a misdemeanor, the government, even when proceeding against the defendant for the penalty only, must furnish the degree of proof required in a criminal case. It was in our opinion so held in Chaffee v. United States, 18 Wall. 516, 21 L. Ed. 908. There the government sought to recover of the defendants penalties aggregating $800,000, and the jury rendered a verdict for $235,680. The trial judge charged the jury:

"The proof in the outset may be defective. It may not be sufficient to enable you, without any doubt or hesitation, to find against the defendants, and still it may be your duty, nevertheless, so to find; for although I instruct you that the case must be made out beyond all reasonable doubt in this, as well as in criminal cases, yet the course of the defendants may have supplied, in the presumptions of law, all which this stringent rule demands. In determining, therefore, in the outset whether a case is established by the government, you will dismiss from your minds the perplexing question, whether it is so made out beyond all doubt. It needs not, in the exigencies of this case, be so proved in order to throw the burden of explanation upon the defendant, if from the facts you believe he has within his reach that power. In the end all reasonable doubt must be removed; but here, at this stage, you need only say, 'Is the case so far established as to call for explanation?' * * * 'Without exception, where a party has proof in his power, which, if produced, would render certain material facts, the law presumes against a party who omits it, and authorizes a jury to resolve all doubts adversely to his defense. The same rule is applicable in a case where a party once had proof in his power which had been voluntarily destroyed or placed beyond his reach.' If you believe the books were kept which contained the facts necessary to show the real amount of whisky in the hands of the defendants, in October, 1865, and the amount which they had sold during the next ten months, or that the defendants, or that either of them, could by their own oath, resolve all doubts on this point—if you believe this—then the circumstances of this case seem to come fully within the most necessary and beneficent rule."

This he did, relying upon the decision of the Supreme Court in Clifton v. United States, 4 How. 242, 246 (11 L. Ed. 957), in an action for forfeiture of property under a statute putting the burden of proof on the claimant, where Mr. Justice Nelson said:

"The burden of the case was upon the claimant, and it was in this stage and posture of it that the instructions were given which are the subject of the exception. and in which the court stated 'that the claimant knew from whom he had bought the goods, and what was their actual cost, and yet had not produced this testimony, or accounted for its absence; that to withhold testimony which it was in the power of the party to produce, in order to rebut a charge against him, which is not supplied by other equivalent testimony, might be as fatal as positive testimony in support or confirmation of the charge; and that, if the claimant had withheld testimony of his accounts and transactions with these parties (meaning the foreign houses from whom he had purchased the goods), the jury were at liberty to presume that, if produced, they would have operated unfavorably to his case.' The instructions had a direct reference to, and are to be construed as intended to bear upon, the matters of defense, probable cause having been shown, and upon the nature and species of the evidence relied on by the claimant in support of it; and in this aspect of the case. at least, without now referring to any other, we think they were not only quite pertinent to the question in hand, but founded upon the well-established rules and principles of evidence."

Mr. Justice Field, speaking for the Supreme Court, held the charge in the Chaffee Case erroneous, saying:

"The purport of all this was to tell the jury that, although, the defendants must be proved guilty beyond a reasonable doubt, yet if the government had made out a prima facie case against them, not one free from all doubt, but one which disclosed circumstances requiring explanation, and the defendants did not explain, the perplexing question of their guilt need not disturb the minds of the jurors; their silence supplied in the presumptions of the law that full proof which should dispel all reasonable doubt. In other words, the court instructed the jury, in substance, that the government need only prove that the defendants were presumptively guilty, and the duty thereupon devolved upon them to establish their innocence, and if they did not they were guilty beyond a reasonable doubt. We do not think it at all necessary to go into any argument to show the error of this instruction. The error is palpable on its statement. All the authorities condemn it. The case of Clifton v. United States, 4 How. 242, 11 L. Ed. 957, cited by the court below, was decided upon a statute which cast the burden of proof upon the claimant in seizure cases after probable cause was shown for the prosecution, and, therefore, has no application. The instruction sets at naught established principles, and justifies the criticism of counsel that it substantially withdrew from the defendants their constitutional right of trial by jury, and converted what at law was intended for their protection—the right to refuse to testify— into the machinery for their sure destruction."

Not a word was said by the court, nor by either counsel in the arguments as printed in the report, to the effect that the trial court erred in charging that the plaintiff was bound to convince the jury beyond a reasonable doubt, or that the case should be reversed because the defendant was denied his constitutional right not to incriminate himself. What was criticised by counsel and held erroneous by the court was the manner in which the trial court said belief beyond a reasonable doubt might be arrived at, viz., by a presumption. True, it was said this method would turn the defendant's right not to testify into an instrument for his sure destruction. It would, however, have been perfectly simple (if the Supreme Court thought that only a preponder-

ance of proof was required) to dispose of the case by saying that the whole foundation of the charge was wrong. It is incredible that, entertaining such a view, it would have sent the cause back for a new trial without the slightest intimation on the subject. In addition to this is the forfeiture case under the same statute of Lilienthal v. United States, 97 U. S. 237, 24 L. Ed. 901. The claimant there contended that proof beyond a reasonable doubt should have been required as in the Chaffee Case, supra. Mr. Justice Clifford, without the least intimation that such proof was not properly required in the Chaffee Case, distinguished it, saying:

"Suggestion was made during the argument at the bar that the court erred in not instructing the jury that they could not find that the property was forfeited unless the matters charged were proved beyond ·a reasonable doubt; but no such exception was taken at the trial, nor is any such complaint set forth in the assignment of errors; nor is there anything in the case of ·Chaffee v. United States, 18 Wall. 516, 21 L. Ed. 908, which conflicts in the least with the views here expressed, as is obvious from the fact that the two cases are radically different, the present being an information against the property, and the former an action against the person to recover a statutory penalty. Information in rem against property differs widely from an action against the person .to recover a penalty imposed to punish the offender. But they differ even more widely in the course of the trial than in the intrinsic nature of the remedy to be enforced."

We cannot reconcile the contention of the government with these two decisions, and as this was the error principally relied on, and we discover no merit in the other assignments, the judgment is affirmed.