27 C.C.P.A.(Patents)

## LONGINI SHOE MFG. CO. v. RATCLIFF.

### Patent Appeal No. 4214.

Court of Customs and Patent Appeals.

Dec. 26, 1939.

Frank Zugelter, of Cincinnati, Ohio, for appellant.

Truman A. Herron and Wood & Wood, all of Cincinnati, Ohio, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark cancellation proceeding from the decision of the Commissioner of Patents reversing the decision of the Examiner of Trade-mark Interferences sustaining appellant's petition for the cancellation of appellee's registered trade-mark "Pla-Zure" for use Tred on shoes.

Appellee's mark was registered May 12, 1936, registration No. 334,696, on an application filed November 22, 1935.

Appellant's trade-mark consists of the words "Pleasure Tred" for use on shoes.

It is agreed by counsel for the parties that the involved trade-marks are confusingly similar, and that the sole issue requiring our consideration is priority of use.

The cause was submitted by appellant on the testimony of the witnesses Charles Longini, vice president and treasurer of the appellant company, and A. J. Sachs, sales manager of the appellant company, and Exhibits Nos. 1 and 2.

Appellee offered no evidence and relied upon the filing date (November 22, 1935) of its application for the registration of its trade-mark to establish priority of use.

Appellant's Exhibit No. 1 is an invoice of Anthony J. Fries, "General Engraver and Stamp Cutter," of Cincinnati, Ohio, dated October 28, 1935, addressed to the appellant company, for "1 Bottom Stamp" and "1 Insole Stamp" of appellant's trademark "Pleasure Tred." Exhibit No. 2 is an order, dated January 8, 1936, for appellant's "Pleasure Tred" shoes given by the Midwest Shoe Company of Minneapolis, Minnesota. It is indicated thereon that the shoes were to be shipped by the appellant company on February 15, 1936. Each of those exhibits was identified by the witness Longini.

The witness Longini testified that, as early as June 1935, Raymond R. Ratcliff, appellee, was aware that appellant had adopted and intended to use its trade-mark

"Pleasure Tred" on its shoes. Relative to Exhibits Nos. 1 and 2, and appellant's first sales of shoes under its trade-mark, the witness testified on direct examination as follows:

"Q. 6. How long have you been manufacturing Pleasure Tred? A. Definitely, since October 28, 1935.

"Q. 7. By 'since October 28, 1935' what do you mean, that the shoe was completed at that time or that it was ready for production? A. Well, we decided on the name around May of 1935, and it takes a period of months to produce a line under a certain trade name. There is a lot of work to be done, lines to be developed, features to be incorporated in the line, and during that time we made various trips to see the trade, advising them of the new line which we were putting out under Pleasure Tred, and samples were completed and branded Pleasure Tred by October 28, 1935, and at that time the samples were shown under the brand Pleasure Tred, and our first sales began at that time definitely from samples.

\* \* \* \* \* \*

"Q. 18. When were these shoes ready for sale? A. In working out the details for the line, we naturally had to work out our sole stamp and sock lining stamp, and through the artists of the Anthony J. Fries Company, maker of steel dies, we had the complete sock lining and sole stamp dies completed by October 28, 1935, at which time we naturally had our sock lining ready, and as soon as the stamp came in, we finished our samples.

"Q. 19. Mr. Longini, I hand you a piece of paper and ask you what it is? A. Well, this is an invoice of the Anthony J. Fries Company, General Engraver and Stamp Cutter, for our bottom stamp and insole lining stamp for our Pleasure Tred dies.

"Q. 20. And that was delivered to you on October 28, 1935? A. Yes.

\* \* \* \* \* \*

"Q. 21. After the lining was completed, were the stamps immediately applied? A. Immediately, yes.

"Q. 22. After the stamp was applied, when did you start to sell those shoes? A. Well, the line was completed for sale of Spring shoes, but before going out with the line, it usually costs anywhere from $3000 to $4000 to develop a new line, and especially a new line as this was to be.

There are many details to be worked out. We had been traveling on the Pleasure Tred proposition since the early part of May, in lining up our accounts, telling them about the new line and getting their reaction on the Pleasure Tred name, and then as the samples were completed, we made our second trip with the samples and started selling the shoes, and they were sold firstly from samples beginning around November 1, 1935.

"Q. 23. You recall the name of the people you sold these shoes to? A. Well, the first bill of any consequence was sold to the Midwest Shoe Company of Minneapolis, Minnesota.

"Q. 24. Do you recall the date of that? A. First sale was made January 8, 1936.

"Q. 25. Mr. Longini, what is this? A. This is an order blank for an order taken by me on January 8, 1936, in Chicago, at the National Shoe Show, sold to the Midwest Shoe Company of Minneapolis, Minnesota, of our Pleasure Tred line, giving them the privilege to sell our Pleasure Tred shoes in Minneapolis, manufactured and made by us.

\* \* \* \* \* \*

"Q. 29. Will you state whether or not you have continued to manufacture and sell the line of shoes termed Pleasure Tred? A. Yes.

"Q. 30. Are you still manufacturing and selling that shoe? A. Yes.

"Q. 31. Have you attempted to have this trade mark registered? A. Yes.

"Q. 32. Have you been successful? A. No."

Relative to Exhibit No. 2, the witness testified on cross-examination that, although the order for "Pleasure Tred" shoes was taken January 8, 1936, the shoes were not then ready for delivery. He then testified as follows:

"XQ. 36. Then at that time you had no shoes bearing the name Pleasure Tred manufactured? A. Yes, we had made some shoes previous to that time.

"XQ. 37. Were there any sold? A. Yes. To the Spiegel, May, Stern Company, of Chicago, Illinois.

"XQ. 38. Have you any record showing that to be the fact? A. Well, these were samples ordered in August and shipped the end of October, 1935.

"XQ. 39. You, however, have nothing to show that these shoes bear the mark

---

Pleasure Tred? A. Yes, I can get the details at the office. I have the letter written to Spiegel, May, Stern Company, stating that we were shipping them.

"XQ. 40. You previously stated that the order to the Midwest Shoe Company was the first, did you not? A. I stated it was the first sale of any size.

"XQ. 41. Then you were in error that this was the first sale, were you not? A. No, I stated that the first bill of any size was sold to the Midwest Shoe Company of Minneapolis, Minnesota, but you asked me whether we had made any Pleasure Tred shoes before that time. We had made samples, which are shoes.

"XQ. 42. They were usually not sold? A. Yes.

"XQ. 43. Please state when these samples were sold. A. In Chicago, approximately in July or August.

"XQ. 44. In July or August of what year? A. 1935.

"XQ. 45. How were these shoes stamped? A. Pleasure Tred. Unquestionably there is a misunderstanding.—When I say a bill is sold and when the shoes are shipped. When a bill is sold, it does not mean that the shoes are to be shipped on that very day. We manufacture numerous shoes according to order, and sometimes it may be six or eight weeks before delivery is made. Now when these samples were sold by me to Spiegel, May-Stern Company, they were not shipped until October, until these dies were completed."

Appellant's witness Sachs did not testify relative to the date of first use by appellant of its trade-mark "Pleasure Tred" on its shoes. The purport of his testimony is that Mr. Raymond R. Ratcliff, appellee, had knowledge of appellant's "Pleasure Tred" line of shoes in the early part of November 1935; that the only comment made by Mr. Ratcliff at that time was: "I think you have something there"; and that no mention was made by Mr. Ratcliff that he had adopted or intended to use a trade-mark similar to appellant's "Pleasure Tred" mark.

The Examiner of Trade-mark Interferences was of opinion that the testimony of the witness Longini was sufficient to establish that appellant had used its trade-mark on its goods as early as October 28, 1935, and, accordingly, sustained appellant's petition for the cancellation of the registration of appellee's trade-mark.

In reversing the decision of the Examiner of Trade-mark Interferences, the Commissioner of Patents stated in his decision that a trade-mark registration "should not be lightly cancelled"; that the burden was upon appellant to establish that it had used its trade-mark on its goods prior to the filing date (November 22, 1935) of appellee's application for the registration of its mark; that "where cancellation must rest upon the testimony of a single witness such testimony should at least be clear, consistent and free from uncertainty"; and that the testimony of Mr. Longini was not clear, consistent, and free from uncertainty. The commissioner then said:

"Knowing respondent's filing date, it is almost inconceivable that petitioner's counsel, if he thought it possible to prove a sale in October, 1935, would not have attempted to do so. Not only did counsel make no such attempt on his direct examination of Mr. Longini, but even after the witness had stated on cross-examination that such a sale had occurred no effort was made on re-direct to explain counsel's oversight or to supply details of the purported sale. Besides contradicting his previous testimony that petitioner's first sale took place in January, 1936, Longini's assertion that a sale was made in October, 1935, is inconsistent with his statement on direct examination that the dies with which the trade-mark was stamped on petitioner's shoes were not received until October 28. That left petitioner just three days in which to complete, pack, and ship the order before 'the end of October.' and while the exercise of such haste was, of course, possible, it seems sufficiently improbable to require explanation.

"Petitioner's case was simple to prove, and doubts created by its own record, or by the absence therefrom of material evidence that was within its control, must be resolved against petitioner. Applying that rule, I do not think the proofs submitted entitle petitioner to the relief here sought."

It was alleged by appellant in its petition for cancellation that appellee was not entitled to use the trade-mark "Pla-Zure" on Tred shoes on the date it filed its application for registration (November 22, 1935) for the

reason that appellant, as early as October 1935, had adopted and used its trade-mark "Pleasure Tred" on shoes.

In view of the state of the record, the precise question presented for our determination is whether the evidence submitted by appellant is sufficient to establish that it had adopted and used its trade-mark on its goods prior to appellee's filing date—November 22, 1935.

It will be observed from the quoted testimony that the witness Longini stated that appellant had been manufacturing "Pleasure Tred" shoes "Definitely, since October 28, 1935." When asked on direct examination to explain what he meant by such statement, he said that "samples were completed and branded Pleasure Tred by October 28, 1935, and at that time the samples were shown under the brand Pleasure Tred, and our first sales began at that time definitely *from samples*" (italics ours); that the stamps for affixing its trade-mark to its shoes were delivered to appellant on October 28, 1935; and that the "stamps" were immediately applied to samples. In reply to the question: "After the stamp was applied, when did you start to sell those shoes?" the witness stated "they were sold firstly *from samples* beginning around November 1, 1935." (Italics ours.) When asked if he recalled the name of anyone to whom such shoes were sold, he replied: "Well, the first bill of any consequence was sold to the Midwest Shoe Company of Minneapolis, Minnesota." He then stated that such sale was made on January 8, 1936. It will be recalled that appellant received an order (Exhibit No. 2), dated January 8, 1936, from the Midwest Shoe Company for "Pleasure Tred" shoes, the shoes to be shipped February 15, 1936.

It is apparent that on direct examination the witness was testifying with regard to sales made as a result of displaying sample shoes. He did not testify on direct examination that appellant had, at any time, sold any sample shoes bearing its trade-mark.

On cross-examination, however, the witness stated that samples of appellant's "Pleasure Tred" shoes were sold to the Spiegel, May, Stern Company of Chicago, Illinois, in July or August 1935, and that such samples bearing the trade-mark "Pleasure Tred" were shipped to that company "the end of October, 1935." When asked if he had anything "to show" that those samples bore the trade-mark "Pleasure Tred," the witness replied: "Yes, I can get the details at the office. I have the letter written to Spiegel, May, Stern Company stating that we were shipping them."

Neither the letter referred to by the witness nor any other documentary evidence relative to the sale and shipment of the sample shoes bearing the "Pleasure Tred" trade-mark to the Spiegel, May, Stern Company was introduced by appellant.

Counsel for appellant argues that "great probative force" should be given the testimony of the witness Longini as to the sale and shipment of the sample shoes to the Spiegel, May, Stern Company, because it was adduced on cross-examination, and that, because counsel for appellee did not request the witness to produce the letter referred to in the testimony, the testimony of the witness "must be accepted as conclusive"; whereas, counsel for appellee argues that, due to the failure of appellant to produce the letter referred to by the witness, the fair presumption is that had it been produced it would have been detrimental to appellant's case. In support of his contention, counsel for appellee calls attention to the following from Jones on Evidence, Fourth Edition, vol. 1, § 19, page 49: "§ 19. Withholding evidence.—There is a recognized legal presumption that a party will produce evidence which is favorable to him if such evidence exists and is available. And the mere withholding or failing to produce material evidence which is available and would, in the circumstances of the case, be expected to be produced, gives rise to a natural inference—less forceful than that arising from the destruction, fabrication or suppression of evidence in which other parties have a legal interest but constantly acted upon by the courts—that such evidence is held back because it would be unfavorable or adverse to the party withholding it."

The rule relative to the "Failure to Produce Most Satisfactory Evidence" is stated in 22 C.J. § 55, page 115, as follows: "Where it is apparent that a party has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that if the more satisfactory evidence had been given

it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case which the more obscure and uncertain evidence did not disclose."

See Clifton v. United States, 4 How. 242, 45 U.S. 242, 11 L.Ed. 957; Backus v. Owe Sam Goon, 9 Cir., 235 F. 847.

Testimony adduced on proper cross-examination is to be regarded as though it were adduced on direct examination.. However, if the cross-examination is extended beyond its proper scope, the cross-examiner makes the witness his own and is bound by undisputed testimony thus adduced. 70 C.J. § 790, page 618, and cases cited in footnotes thereunder.

In the instant case it is clear that the cross-examination of the witness Longini was not extended beyond its proper scope. Accordingly, the testimony of the witness that sample shoes bearing the trade-mark "Pleasure Tred" were shipped the "end of October, 1935," should be considered as though adduced on direct examination.

We are of opinion, therefore, that the rule hereinbefore stated, relative to the failure to produce the most satisfactory evidence, is here applicable, and that had the documentary evidence to which reference was made on cross-examination by the witness Longini been produced it would have been detrimental to appellant's case.

In conclusion, we think it proper to observe that counsel for appellant must have known that, at the conclusion of the direct examination of appellant's witnesses, appellant had failed to make a case. It is a fair assumption then, we think, that, had appellant made a sale of sample shoes to the Spiegel, May, Stern Company of Chicago, Illinois, and shipped sample shoes bearing the trade-mark "Pleasure Tred" to that company the "end of October, 1935," such fact would have been brought out on the direct examination of the witness Longini had counsel for appellant been informed of such sale and shipment. Due to its importance in this case, it is inconceivable that, had such shipment been made, counsel for appellant would not have been informed of that fact prior to the direct examination of appellant's witnesses.

We are of opinion that the Commissioner of Patents reached the right conclusion, and his decision is affirmed.

Affirmed.