### David Cushing & another *vs.* Paul B. Worrick.

Punctuation is not to be regarded in construing a statute.
In the construction of statutes, a limiting clause is to be restrained to the last antecedent,
    unless the subject matter requires a different construction.
After a dispute of some years' duration between a town and the proprietors of common
    lands therein, about the rights of taking seaweed from the shores and of feeding cattle on
    the lands, the legislature, upon the petition of said proprietors, and with the consent of
    the town, incorporated the proprietors by an act which defined the bounds of their lands,
    authorized them to erect certain gates and water fences at the ends thereof, and provided
    that the town should " be at the expense of the aforesaid gates and water fences," and " re-
    served to the town the privilege of the shores, and of feeding all lands, not comprehended
    within the aforementioned bounds." *Held,* that the town's privilege of the shores ex-
    tended to those comprehended within said bounds; and was not forfeited by ceasing to
    maintain the gates and water fences.

Action of tort by lessees of the Proprietors of Common
and Undivided Lands in Hull against an inhabitant of Hull,
claiming under a license from the town, for taking seaweed from
the easterly portion of Nantasket or Long Beach, to put upon
his lands in Hull. The parties submitted the case to the judg-
ment of the court upon a statement of facts, so much of
which as is material to the understanding of the decision was
as follows :

For some years previous to 1810 the rights of taking seaweed
from the beaches, and of feeding cattle on the lands, had been

in dispute between said proprietors and the town.  In May 1810 said proprietors presented a petition to the legislature, representing that, in consequence of the town's never having particularly located a highway across these commons, the inhabitants had claimed and exercised a right of turning their cattle and sheep into the streets, whereby they had free communications with the commons ; and praying for an act of incorporation " to enable the proprietors of these common rights to secure, manage, and dispose of the same, so as to secure their rights and best promote their interests."

On the 17th of November 1810 the town passed this vote : " Voted, not to oppose the petition of said proprietors, if the proprietors agree to let the town have the beaches ; also all the feeding lands in the township from Stony Beach to the point that is enclosed by gates and water fences ; also said town doth agree to give up to said proprietors all the feed that grows on the road leading through said commons.  In consequence, said proprietors are to give up said beaches to the town, that is to say, said proprietors do give up to the town all said beaches rent for, be it more or less ; then voted and agreed that the town pay for all the gates and water fences."

On the 22d of June 1811 the legislature passed an act incorporating said proprietors, *St.* 1811, *c.* 56, the first section of which defined the boundaries of their lands, including the whole of Long Beach, and excluding that part of the town which extended from Stony Beach to the gates and water fences ; and the third section declared that " the said proprietors shall have liberty to erect the following gates and water fences " at specified places at each end of the beach, " and the said town of Hull shall be at the expense of the aforesaid gates and water fences ; reserving to any person the privilege of passing and repassing through said gates, as occasion may require ; and the proprietors may have liberty to impose a penalty, not exceeding one dollar, for the neglect of any such person in not shutting said gates ; and also reserving to the town of Hull the privilege of the shores, and of feeding all lands, not comprehended within the aforementioned bounds."  The last comma was not in the

act as passed to be engrossed; and the words "all lands" with the subsequent comma are interlined in the act as engrossed.

From the passage of this act until 1837, the town, with the knowledge of said proprietors, and without any interference, disposed of the seaweed on the beaches, and granted to their citizens the privilege of taking as much seaweed from the beaches as they desired to put upon lands occupied by them within the town. Said proprietors organized under the act of 1811 on the 5th of March 1812, and have since had exclusive possession of the lands described in the first section, except in so far as their possession of Long Beach is deemed to be controlled by the facts herein stated. For a long series of years, beginning as early as 1837, as shown by the votes of the town and of the proprietors, the right to manage the beaches has been in controversy between them. In 1838 the proprietors resumed the control of Long Beach, and voted that the gates and water fences be left down, and afterwards passed similar votes; but, notwithstanding their votes prohibiting it, and the town's knowledge thereof, citizens of Hull, not proprietors, have continued to a greater or less extent to take seaweed from that beach.

The town paid for the erection of the gates and water fences mentioned in the act of incorporation. But the increase of travel at Hull has been such, that since 1838 it has been impossible to keep up the gates and water fences, and they have not been kept up during that time.

*J. A. Andrew & H. E. Hersey*, for the plaintiffs.

*E. G. Loring & D. Thaxter*, for the defendant.

BY THE COURT. We are of opinion that upon the facts agreed the defendant is entitled to judgment.

The plaintiffs claim under a lease from the Proprietors of Common and Undivided Lands in Hull; the defendant, under a general license from the inhabitants of Hull, to take seaweed from their lands. The question therefore is, whether the town or the proprietors have the better title to the seaweed, shells and other profits of the beach or shore, between high and low water mark.

Without going into the ancient title, it is enough to say that

a controversy had arisen between the two corporations as to the right to the shores. The proprietors applied to the legislature to incorporate them. It is conceded on both sides that an order of notice was issued, and that the parties were both in attendance, and the act passed with the consent of both parties.

This act, after defining the boundaries of the lands of the corporation, and the places at which gates and water fences should be erected at the expense of the town, and "reserving to any person the privilege of passing and repassing through said gates as occasion may require," contains the following clause, upon which this case turns: "And also reserving to the town of Hull the privilege of the shores and of feeding all lands not comprehended within the aforementioned bounds."

The question is, whether "the privilege of the shores," including of course the right to take seaweed, is limited to shores "not comprehended within the aforementioned bounds." And the court are of opinion that this privilege is not so limited.

It is unnecessary to resort to the draft of the bill as passed to be engrossed, in order to explain the statute as actually engrossed; for the general rule is that punctuation is no part of a statute. Barrington on Sts. (5th ed.) 439, note. 3 Dane Ab. 558. Dwarris on Sts. (2d ed.) 601. And in this case the omission of the comma between "lands" and "comprehended" makes the case clear in favor of the defendants; while its insertion does no more than to make it grammatically possible to apply the limiting clause to the shores, as well as to the feeding lands. But such a clause is ordinarily to be confined to the last antecedent, unless there is something in the subject matter, which requires a different construction. Finch, lib. 1, *c.* 3. Noy's Max. (6th ed.) 2. Dwarris on Sts. 590, 591, and authorities cited.

The difference in the form of the two clauses strengthens this conclusion. The first term — "the shores" — is definite in form, and complete in meaning; the second — "all lands" — is indefinite, and needs some explanation to define it. A similar, though less marked, difference of expression is found in the town's vote of November 1810. A reference (if necessary,

which it is not,) to that vote would leave no doubt of the agreement of the two corporations, upon which the statute in question was based.

The terms of the statute itself, though not entirely free from ambiguity, appear to us, for the reasons already stated, to confirm the privilege of the town in all the beaches. Such an act, passed with the consent of all parties interested, is binding. All objection to legislation affecting private rights is removed by consent. *Consensus tollit errorem. Volentibus non fit injuria.* And the construction which we adopt is the same which was acquiesced in by the parties for twenty six years succeeding the passage of the statute.

It was argued that if the town ever had any right to the Long Beach under this statute, the consideration thereof was the maintenance of the gates and water fences; and that the town, by ceasing to maintain them, had forfeited all rights under the statute. But we do not consider the rights secured to the town by the statute as conditional or dependent upon its forever maintaining the gates and fences. And the case shows that they were removed with the consent, if not by the act, of the Proprietors of Common and Undivided Lands.

*Judgment for the defendant.*