LEVY. The EDMUND. See Cases Nos. 4,287 and 4,288.

---

## Case No. 8,307.

### The LEWELLEN.

[4 Biss. 156.] [1]

District Court, D. Indiana.  May, 1868.

ADMIRALTY JURISDICTION—OHIO RIVER— POWER OF CONGRESS OVER NAVIGATION — PENALTY — PRACTICE — SEIZURE — DUTY OF STEAMER AS TO POSTING SYNOPSES OF LAWS.

1. The admiralty jurisdiction of the national courts extends over the river Ohio.

2. The power granted by the constitution to congress "to regulate commerce with foreign nations and among the several states," includes the authority, not only to pass laws regulating trade, but also navigation and intercourse.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. The United States district courts have exclusive original jurisdiction of all civil causes of admiralty and maritime cognizance.

4. The act of July 4, 1864 [13 Stat. 390], must be regarded as a navigation law.

5. A proceeding in rem is the proper mode of prosecution for the violation of the 8th section of the act of July 4. 1864, charging a neglect to post up in conspicuous places in a steamer, synopses of the laws relating to the carriage of passengers, as required by that section.
[Cited in Hatch v. The Boston, 3 Fed. 809.]

6. In proceedings in rem against vessels for penalties and forfeitures under acts of congress. it is a general rule that a seizure of the vessels must precede the filing of the libels, in order to give jurisdiction to the court; and that consequently such precedent seizure must be averred in the libel. But, if under the act of congress, the owners execute delivery bonds. they thereby waive the objection of the want of a prior seizure.
[Followed in The Lewellen, Case No. 8,308. Cited in Hatch v. The Boston, 3 Fed. 811.]

7. The act of July 4, 1864. requiring that two copies of the synopsis of the laws relating to passengers on steamers. shall be posted up in every licensed and enrolled vessel carrying passengers, one copy thus posted up is no defense against a prosecution for a violation of the act.

8. *Held*, also, that if the owners of the steamer could not procure copies of the synopsis elsewhere. they were bound. at their peril, to apply for them to the secretary of the treasury; and that if they failed to do so. and proceeded on a voyage without the copies, the penalty was thereby incurred.

In admiralty.

A. Kilgore, U. S. Dist. Atty., and C. E. Marsh, for the United States.

Hanna & Knefler, for respondents.

McDONALD, District Judge. The libel in this case charges, that, on the 3d of September, 1867, at Evansville, Indiana, a port of delivery, the steamer Lewellen, being engaged in navigating the Ohio river along the coast of Indiana, carrying cabin and steerage passengers for hire, and being then and there temporarily landed and moored to the shore at Evansville in the regular course of passage on said river, and being wholly propelled by steam and subject to enrolment and license under the laws of the United States, the master and owners of said boat then and there wrongfully and unlawfully failed, neglected and refused to place and keep in conspicuous places on the boat two copies of a synopsis of such of the laws of the United States relating to the carriage of passengers and their safety on board of vessels propelled in whole or in part by steam, as had been theretofore prepared and published by the secretary of the treasury. The libel avers that said synopsis had been published and printed, and that copies of it might readily have been obtained by said master and owners. The libel alleges that, by reason of said negligence, a penalty of one hundred dollars has been forfeited to the government; and it prays the proper process. the seizure of the steamer, and judgment, &c.

On the filing of this libel, a warrant was issued, by virtue of which the marshal seized the boat and detained her until the owner, by executing a bond under the provisions of the act of March 3, 1847 [9 Stat. 181], procured a re-delivery of the boat to him.

The owners appear to the action, make claim, and demur to the libel; and the point to be decided is, whether the demurrer should be sustained.

This prosecution is founded on the 8th section of the act of July 4, 1864 (13 Stat. 390). That section provides: "That the secretary of the treasury shall cause to be prepared a synopsis of such of the laws relating to the carriage of passengers and their safety on vessels propelled in whole or in part by steam, as he shall think expedient, and have the same printed in convenient form to be framed under glass, and give to any such vessel two copies, on application of its owner or master, who shall, without unnecessary delay, have the same framed under glass, and place and keep them in conspicuous places in such vessel in the same manner as is provided by law in regard to certificates of inspectors; and no clearance shall be issued to such vessel, until the collector or other chief (officer) of the customs, shall be satisfied that the provisions of this section shall have been complied with by such owner or master; and in case such owners or master shall neglect or refuse to comply with (the) provisions of this section, he or they shall furthermore forfeit and pay for each offense one hundred dollars, and such fine shall be a lien upon the vessel until paid."

In support of the demurrer, three objections are urged,—first, that the remedy in this case is an action of debt, not a libel in rem; second, that the libel does not sufficiently allege that the secretary of the treasury prepared the synopsis in question, or that there is alleged a willful neglect to apply to him for it; third, that the libel is bad, as not averring a seizure of the vessel before the libel was filed. We will examine these objections in the order here stated.

I. It is insisted that the action in this case should have been debt, and not a libel in rem. It is observable that the section on which the action is founded says nothing about the form of the remedy. It only declares the penalty, and makes it a lien on the steamer. It may be that, on common law principles, an action of debt would lie to recover the penalty in question. But in that case, I rather think the government would abandon the lien given on the steamer by the statute. Indeed I know of no method by which that lien could be asserted at common law. But the objection under consideration does not directly present the question whether an action at common law would lie for this penalty, but whether the offense charged is within the admiralty jurisdiction of this court. That the admiralty juris-

diction of the national courts extends over the river Ohio, is too well settled to admit the least doubt. The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443.

Along with the power on the part of congress "to regulate commerce with foreign nations, and among the several states,"—which includes not only trade, but navigation and intercourse—the constitution extends the judicial power of the national courts "to all cases of admiralty and maritime jurisdiction." Story, Const. § 1663. The power to regulate commerce among the several states undoubtedly authorized congress to pass the law under which this penalty is claimed; and the constitutional provision, extending the judicial power over "all cases of admiralty and maritime jurisdiction," as certainly empowered congress to give the remedy, in cases of the kind under consideration, to the admiralty courts.

The 9th section of the judiciary act gives to the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade." 1 Stat. 77. The act of July 4, 1864, on which this suit is founded must be classed with our "navigation laws;" and if so, it would seem that the 9th section of the judiciary act expressly gives to this court, as a court of admiralty, jurisdiction of the present case. Unquestionably, the seizure in this case was a seizure under a navigation law.

Parsons says: "In general, and as a definition, there seems to be no other rule than that our admiralty jurisdiction embraces all maritime contracts, torts, injuries or offenses." 2 Pars. Mar. Law, 508. If so, it would seem that it embraces the present case; for the offense charged is a maritime offense.

In the case of U. S. v. The Betsey, 4 Cranch [8 U. S.] 443, it was held that all seizures under the laws of impost, navigation, or trade of the United States, made on waters navigable from the sea, by vessels of ten or more tons burden, are civil causes of admiralty and maritime jurisdiction. The present is a case of seizure under our "navigation" laws made on waters navigable from the sea by vessels of more than ten tons burden.

In Cutler v. Rae, 7 How. [48 U. S.] 729, Chief Justice Taney remarked that "the court of admiralty undoubtedly has jurisdiction in cases where the vessel or cargo is subject to a lien created by maritime law." If admiralty jurisdiction exists by reason of a lien created by maritime law, it would seem strange that it should not equally exist by reason of a lien created by an act of congress legislating on a subject properly belonging to the admiralty powers of the national government. For the protection of its commerce, for the collection of its revenues, and for the enforcement of all the regulations of its police in navigable waters, the

United States, like all other commercial nations, find it necessary to impose penalties and forfeitures on goods afloat and on vessels, in relation to which, the laws of trade, navigation, and revenue have been violated. * * * Whenever, therefore, a penalty or forfeiture is attached to a ship or vessel, or goods on board of her, it is enforced by a seizure of the thing, and the proceeding to condemn is a suit in the district court." Ben. Adm. § 301. "All seizures under laws of impost, navigation, or trade of the United States, where the seizures are made on waters navigable from the sea by . vessels of ten or more tons burthen, are civil cases of admiralty and maritime jurisdiction." Id. § 302.

It appears to me, therefore, that in the present case, a proceeding in rem before this court, as a court of admiralty is entirely proper. Indeed, I think it is the only proceeding that could have been adopted, which would secure to the government the benefit of the lien created by the statute.

II. The second objection made to the libel is, that it does not sufficiently allege that the secretary of the treasury had prepared the synopsis in question, or that the master and owner willfully neglected to apply to him for it.

The libel alleges that the master and owner "willfully, wrongfully, and unlawfully failed, neglected and refused, and unnecessarily delayed to place and keep in conspicuous places two copies of a synopsis of such of the laws of the United States, relating to the carriage of passengers and their safety on board of vessels propelled in whole or in part by steam, as had been theretofore caused to be prepared and published by the secretary of the treasury of the United States, for the purpose of supplying to the owners or masters of such vessels two copies of the same for every such vessel, and had been caused to be printed by said secretary, in such convenient form that the same might have been framed under glass by said master and owner, and kept in conspicuous places in said vessel; that such printed copies of said synopsis were then and there, and long before had been for many months next previous thereto, accessible to the owners and master of said vessel Lewellen, but the said owners, and master willfully, wrongly, and unlawfully, wholly failed, neglected, and refused, during said months, and on the day and year aforesaid, to apply to said secretary for two of said copies," &c.

The libel, as to this objection, is faultless.

III. It is insisted that the libel is defective for not averring a seizure of the steamer before the libel was filed. As a fact, it seems that the vessel was not seized till after the filing of the libel; and it is certain that the libel contains no allegation of such a prior seizure. It is doubtless a general rule that in order to give the court jurisdiction in cases of penalties against vessels, a seizure must precede the filing of the libel; and that consequently such seizure must be averred in it. Conk. Prac. 592; Ben. Adm. 1301. But whether this general rule is applicable to the case at bar, it is not important to decide; because the owners of the vessel have waived the objection by the execution of a delivery bond under the act of congress.

The act of March 3, 1847, provides: "That in any case brought in the courts of the United States, exercising jurisdiction in admiralty, where a warrant of arrest or other process in rem shall be issued, it shall be the duty of the marshal to stay the execution of such process, or to discharge the property arrested if the same has been levied, on receiving from the claimant of the same a bond or stipulation in double the amount claimed by the libellant, with sufficient surety to be approved by the judge of said court, or, in his absence, by the collector of the port, conditioned to abide and answer the decree of the court in such cause; and such bond or stipulation shall be returned to the said court, and judgment on the same, both against the principal and sureties, may be recovered at the time of rendering the decree in the original case." 9 Stat. 181.

In pursuance of said act, the claimants executed a bond on the 6th of December, 1867; and the same was filed in this court on the 9th of January following. By the filing of the bond here, it undoubtedly became a part of the record in this cause. Some doubt, indeed, may exist whether in deciding this demurrer, I can look to the bond at all. It is a general rule that "a demurrer searches the whole record;" but it is not very clear that this rule in general, goes any further than to embrace the whole pleading in the case. I am inclined, however, to extend it to the bond in question, for by the provision of the act just cited, if the government should succeed in this action, judgment would be rendered in this very bond, as the foundation of the adjudication. The bond, I think, must. therefore, in some sort, stand as in the nature of a pleading—at least so far as a demurrer and final judgment are concerned.

The objection to the libel relating to the omission of an averment of a prior seizure, is an objection to the jurisdiction of the court. And the question is, has not the claimant, by the execution of this bond, acknowledged the jurisdiction of the court, and estopped himself now to insist on any objection to it? I am inclined to think he has. And in this view I am strongly supported by the decision of Mr. Justice Story in the case of The Abby [Case No. 14]. In that case, a bond had been executed, as in the present, and an objection was made to the jurisdiction for the want of a proper seizure before the libel was filed. And the judge said "if the party meant to except to the jurisdiction, he should have filed a declinatory

allegation in the nature of a plea to the jurisdiction. But here he has applied to the court for, and obtained a delivery of, the property on bail; and the very stipulation of bail admits the jurisdiction of the court. * * * Nor is this a mere matter of form, but a substantial and important doctrine, regulating the essential rights of the parties. If a plea to the jurisdiction had been taken in the court below, no delivery on bail would have taken place until the jurisdiction had been affirmatively settled. If the court below felt itself ousted of jurisdiction, it would have remitted the cause and the property to the district court of Maine. But after a delivery on bail, how is that possible? The party gets possession of the property, without a trial, from the possession of a tribunal whose jurisdiction he admits as competent to bail the property; and, as soon as it is withdrawn from the grasp of the court, denies its power to institute an inquiry into the question of forfeiture. It cannot be admitted that any party can first affirm the jurisdiction, by taking the property on bail, and then turn around and deny the same jurisdiction, when the court can no longer administer effectual relief to the interests of other persons. The party is estopped by his own acts from such a proceeding." This decision is cited with approbation in Conk. Prac. (5th Ed.) 577, 578. Its reasoning seems to me to be just; and, though that case and the present are not in all respects alike, yet I think that the reasoning applies in full force to the case at bar.

I hold, therefore, that the third objection made to the libel can not be sustained. And it seems to me that no objection urged against this libel is valid.

The demurrer is overruled at the cost of the claimant.

Afterwards, June 2, 1868, the owners of the boat, Benjamin P. Brazelton and John L. Downey, having filed a bond, their claim, and an answer by way of denial, the cause was tried on its merits. The following is the decision:

McDONALD, District Judge. I consider that the evidence for the prosecution in this case proves, prima facie, all the allegations in the libel. Indeed, it is admitted on the part of the defense that in point of fact, the steamer Lewellen, at the time and place mentioned in the libel, did not have on board two copies of the synopsis in question. It is, however, insisted in defense—and I think it is proved—that she constantly kept in a conspicuous place in her cabin one of those copies.

The evidence in defense is, that for some months prior to the first of September, 1867, this steamer was laid up for repair at Paducah, Kentucky; that immediately preceding that day her master applied to the surveyor of the port of Paducah, where she had been duly licensed and enrolled, for all proper papers and documents required by law to be used on steamers; that the surveyor thereupon furnished him with all such documents, except the copies of the synopsis of the laws mentioned in the libel; that the surveyor did not furnish him two copies of that synopsis, for the reason that he had not two such copies on hand; that thereupon the steamer, on the first day of September, 1867, set out from Paducah on a voyage to Cincinnati without two of said copies; and that on the second day thereafter, she reached the port of Evansville, having on board only one of said copies.

The counsel for the owners insist that these facts amount to a defense to this action. They argue that the acts of congress require that the secretary of the treasury shall keep all the surveyors of ports supplied with copies of the synopsis in question; that the master or owner of a steamer is only bound to apply to the surveyor of the port where his steamer is enrolled and licensed for such copies; and that when he has applied to such surveyor for them and has failed to procure them, he has done his whole duty, and may proceed on his voyage without them.

I am not aware of any act of congress that requires the secretary of the treasury to furnish the surveyors of ports with any copies of the synopsis under consideration. The only act on this subject of which I have any knowledge is that on which this libel is founded. The 8th section of that act provides: "That the secretary of the treasury shall cause to be prepared a synopsis of such of the laws relating to the carriage of passengers, and their safety on vessels propelled in whole or in part by steam, as he shall think expedient, and have the same printed in convenient form, to be framed under glass, and give to any such vessel two copies, on application of its owners or master." 13 Stat. 391.

I suppose it is unimportant how the master or owner of a steamer obtains these copies, so that he actually procures them and keeps them in the proper places in his vessel. But I think it is too plain for argument, that the act above cited contemplates that on application of the master or owner to the secretary of the treasury, the latter shall furnish the copies. And I think it equally plain that if the master or owner cannot procure them elsewhere, he must apply for them to the secretary of the treasury.

I conclude, therefore, that the defense set up fails. Consequently, I find for the libellant, and assess the penalty at one hundred dollars.

Judgment for the penalty and costs.

NOTE. For numerous authorities on the various questions of admiralty jurisdiction, con-

sult The Flora [Case No. 4,878]; The Celestine [Id. 2,541]; The Selt [Id. 12,649]. And in the following cases it is held that the admiralty jurisdiction of the federal courts extends over the Ohio river; The Dick Keys [Id. 3,898]; Seven Coal Barges [Id. 12,677].

[Another libel was filed on behalf of the United States for the penalty under Act May 5, 1864 (13 Stat. 63), for failure to paint name on wheelhouse. A demurrer to this libel was overruled at the same term of the court as above. Case No. 8,308.]