## UNITED STATES v. EIGHT PACKAGES AND CASKS OF DRUGS.

(District Court, S. D. Ohio, W. D. August 15, 1910.)

No. 1970.

**1. Druggists ⬅11 — Seizure of misbranded drugs prior to filing of libel for forfeiture is jurisdictional.**

Seizure of drugs misbranded in violation of Act June 30, 1906, § 8, par. 2 (Comp. St. § 8724), is jurisdictional, and must precede filing of libel for forfeiture under section 10 (Comp. St. § 8726), and be alleged in libel, in view of sections 3–5 (Comp. St. §§ 8719–8721), and Judiciary Act (Comp. St. 1901, § 457), and notwithstanding punctuation of section 10.

**2. Statutes ⬅200—Punctuation may be disregarded.**

Punctuation may be disregarded in construing statute.

**3. Lis pendens ⬅3(1)—Proceeding in rem is notice to world.**

Proceeding in rem is notice to world.

**4. Druggists ⬅11—Libel for forfeiture of misbranded drugs must be verified by person having knowledge of facts.**

Under Const. Amend. 4, libel for forfeiture of goods misbranded under Act June 30, 1906, § 8, par. 2 (Comp. St. § 8724), must be verified by person having knowledge of facts, since proceeding is in effect proceeding against owner, in nature of criminal proceeding.

**5. Druggists ⬅11—Libel for forfeiture of misbranded drugs held insufficient.**

Libel for forfeiture of packages of drugs, misbranded in violation of Act June 30, 1906, § 8, par. 2 (Comp. St. § 8724), on ground that drugs, having been transported from one state to another, remain unloaded, unsold, or in original unbroken packages, in violation of sections 2 and 10, *held* insufficient for failure to show drugs subject to act.

**6. Druggists ⬅11—Packages of drugs with unintelligible labels held to require statement of alcoholic contents.**

Though legend on packages of drugs reading, "Prescription Products Company, Dayton, Ohio, S. 59884, P. D. Co. No. (1)," is unintelligible, it is a label within Act June 30, 1906, § 8, par. 2 (Comp. St. § 8724), and section 10 (Comp. St. § 8726), and alcoholic contents should be shown on the label.

**7. Criminal law ⬅559—Forfeitures ⬅5—One cannot be convicted, or his property forfeited, by inference.**

One cannot be convicted of a criminal offense, or his property forfeited, by inference.

Libel by the United States for forfeiture of eight packages and casks of drugs. On demurrer to libel. Demurrer to libel sustained.

Sherman T. McPherson, U. S. Atty., of Cincinnati, Ohio.

Charles M. Woodruff, of Detroit, Mich. (H. M. Campbell, of Detroit, Mich., of counsel), for claimant.

HOLLISTER, District Judge. The libelant represents that certain packages and casks of drugs are labeled and marked and branded on the outside in a certain way. The marking on each is described, the description differing only in the designated numbers of each, and it may suffice to quote the marking and branding of one. "Prescription Products Company, Dayton, Ohio, S. 59884, P. D. Co. No. (1)." The casks or packages are represented as being within and on the premises of the Prescription Products' Company, in Dayton, Ohio, and owned by or in the possession of that company for the purpose of being used and manufactured, sold, and consumed as drugs.

It is represented that these packages are misbranded, within the meaning of section 8, paragraph 2, under the title "Drugs," of the Act of Congress of June 30, 1906, 34 Stat. 768 (Comp. St. § 8724), and are liable to condemnation for the reason that each package and cask fails to bear a statement on the label of the quantity and proportion of any alcohol, or any derivative or preparation of alcohol, contained therein, and that each of the packages and casks contain a certain percentage of alcohol, as set forth in the libel. It is alleged that they have been and were transported from Detroit to Dayton, and are now in the original unbroken packages as the same were transported, and the libelant prays that they be proceeded against and seized for condemnation in accordance with the act of Congress, and according to the course of this court in cases of admiralty and maritime jurisdiction, so far as it is applicable, and that they may be adjudged and decreed misbranded, and be condemned as provided by law.

The Act of June 30, 1906, provides, in section 10 (Comp. St. § 8726): "That any article of food, drug, or liquor that is adulterated or misbranded within the meaning of this act, and is being transported from one state, territory, district, or insular possession, to another for sale, or, having been transported, remains unloaded, unsold, or in original unbroken packages, or if it be sold or offered for sale in the District of Columbia or the territories, or insular possessions of the United States, or if it be imported from a foreign country for sale, or if it is intended for export to a foreign country, shall be liable to be proceeded against in any district court of the United States within

the district where the same is found, and seized for confiscation by a process of libel for condemnation. And if such article is condemned as being adulterated or misbranded, or of a poisonous or deleterious character, within the meaning of this act, the same shall be disposed of by destruction or sale, as the said court may direct, and the proceeds thereof, if sold, less the legal costs and charges, shall be paid into the Treasury of the United States, but such goods shall not be sold in any jurisdiction contrary to the provisions of this Act or the laws of that jurisdiction: Provided, however, that upon the payment of the costs of such libel proceedings and the execution and delivery of a good and sufficient bond to the effect that such articles shall not be sold or otherwise disposed of contrary to the provisions of this act, or the laws of any state, territory, district, or insular possession, the court may by order direct that such articles be delivered to the owner thereof. The proceedings of such libel cases shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury of any issue of fact joined in any such case, and all such proceedings shall be at the suit of and in the name of the United States."

The claimant demurs on four grounds, which will be taken up and disposed of seriatim.

(1) "The court is without jurisdiction, inasmuch as it appears from said libel that no seizure of the goods therein mentioned had been made prior to the filing of said libel."

It has been the practice in this jurisdiction for seizures of goods for alleged infringements of the food laws to be made on warrant issued after the libel. This is probably the universal practice in such cases. The question, so far as it relates to the Food Act, has not been passed upon by any of the courts, so far as this court is aware. But it is not a new question in admiralty, or in the many cases in which seizure and forfeiture of goods have been sought under navigation, revenue, and other laws of the United States.

Upon first impression, and having regard to the punctuation of the act, it would seem that the article is to be seized for confiscation by a process of libel for condemnation in any District Court within the district where the same is found; the basis for the seizure being the libel on which the warrant of seizure is issued. If there were no other light to be had upon the subject, the conclusion might easily be reached that it would be

sufficient for a warrant of arrest to follow the libel, the filing of which gives the court jurisdiction. But it has been the rule in proceedings in rem, ever since the declaration of Mr. Justice Story in The Brig Ann, 9 Cranch, 289, 3 L. Ed. 734, "that before judicial cognizance can attach upon a forfeiture in rem, under the statute, there must be a seizure; for until seizure it is impossible to ascertain what is the competent forum."

In that case the Nonintercourse and Nonimportation Act directed against Great Britain and France (Act March 1, 1809, 2 Stat. 528) was involved. Section 5 provided: "That whenever any article or articles, the importation of which is prohibited by this act, shall, after the twentieth of May, be imported into the United States, * * * contrary to the true intent and meaning of this act, or shall, after the said twentieth of May be put on board of any ship or vessel, boat, raft or carriage, with intention of importing the same into the United States, * * * as well as all other articles on board the same ship or vessel, boat, raft, or carriage, belonging to the owner of such prohibited articles, shall be forfeited; and the owner thereof shall moreover forfeit and pay treble the value of such articles."

Section 8 gave authority to every collector and other enumerated officer to seize the goods and to "keep the same in custody until it shall have been ascertained whether the same have been forfeited or not."

Section 18 provides: "That all penalties and forfeitures arising under or incurred by virtue of this act, may be sued for, prosecuted and recovered, with costs of suit, by action of debt, in the name of the United States of America, or by indictment or information, in any court having competent jurisdiction to try the same."

Mr. Justice Story said what he did after a consideration, not of the particular statute under which the seizure was made or attempted to be made in that case, but from a consideration of Judiciary Act September 24, 1789, c. 20, § 9 (1 Stat. 76), which conferred jurisdiction upon the District Court, and which says those courts are vested with "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts, as well as upon the high seas."

In determining the question of the jurisdiction of the court, Mr. Justice Story said: "It seems manifest ⁕ ⁕ ⁕ that the jurisdiction as to revenue forfeitures was intended to be given to the court of the district, not where the offense was committed, but where the seizure was made. And this with good reason. In order to institute and perfect proceedings in rem, it is necessary that the thing should be actually or constructively within the reach of the court. It is actually within its possession when it is submitted to the process of the court; it is constructively so when, by a seizure, it is held to ascertain and enforce a right or forfeiture which can alone be decided by a judicial decree in rem. If the place of committing the offense had fixed the judicial forum where it was to be tried, the law would have been, in numerous cases, evaded; for, by a removal of the thing from such place, the court could have had no power to enforce its decree. The Legislature, therefore, wisely determined that the place of seizure should decide as to the proper and competent tribunal."

It seems clear that the "statute" to which that great judge referred was the Judiciary Act, the terms of which he was considering. This court is not alone in that view. The case, Silver Spring, Fed. Cas. No. 12,858, is reported to have been brought under Act July 29, 1813, §§ 5–7. That act (3 Stat. at Large, 49–52) seems to have been limited in its operation to February 17, 1816, while the libel charges the fraud and deceit of obtaining the bounty to have been perpetrated in the summer of 1853; but it must be assumed to have been in force when it was sought to condemn the fish, etc., in the year 1854. It will be noticed that the act does not provide for a seizure, although it does provide for a forfeiture.

The claim of counsel for the defendant in that case, based on the Judiciary Act, and Mr. Justice Story's decision that the action must fail because no seizure of the property was alleged in the libel, was sustained by Judge Sprague, of the District Court of Massachusetts, who, speaking of the decision in The Brig Ann, said: "The decision, in that case, did not depend upon the construction of the particular statute under which the property then became forfeited, but upon the construction of Act September 24, 1789 (the Judiciary Act), which is equally applicable to the present proceeding and, therefore, the rule laid down by the Supreme Court in that case, 'that before judicial cognizance can attach upon a forfeiture, in rem, there must be a seizure,' must govern the present case."

The question was before Judge Drummond in The May Fed. Cas. No. 9,330, and while he was evidently not satisfied with the reasons for the rule, yet he felt compelled, upon a consideration of the Judiciary Act, the Navigation Act of 1871, and the decision in The Brig Ann, to rule that an actual seizure of the res prior to the filing of the libel is essential to the jurisdiction of the federal courts, and that the libel should state the place of seizure. The learned judge also states the fact to be that the twenty-second rule in admiralty was adopted by the Supreme Court in conformity with the view of Mr. Justice Story in The Brig Ann.

The Judiciary Act as it now reads (1 Comp. St. 1901, p. 457) gives jurisdiction to the District Courts: "Eighth. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common-law is competent to give it, and of all seizures on land and on waters not within admiralty and maritime jurisdiction." If this section is construed as the Judiciary Act was construed in The Brig Ann, and it would seem it ought to be, the conclusion is inevitable that jurisdiction is based upon the seizure, and for the same reasons as were given in that case, as well as those to which reference will be made.

In every one of the cases arising under the laws of the United States, providing for seizure, forfeiture, confiscation, and condemnation, whether they are revenue laws, or navigation laws, or laws providing for confiscation of certain property in times of war or rebellion, the rule is universally declared, whenever the question was raised, that the matter of seizure is jurisdictional, and that the libel follows, through which it may be determined whether the seizure was legal or not.

In Gelston v. Hoyt, 3 Wheat. 246, 4 L. Ed. 381, the Act of February 18, 1793, 1 Stat. 305, was under consideration, section 27 of which provided that an officer of the revenue might go on board a ship within or without his district, and if it should appear that any breach of the laws of the United States has been committed, whereby the ship or goods on board might be liable to forfeiture, to make seizure of the same. Mr. Justice Story, at page 318, says with respect to proceedings in rem: "Where property is seized and libeled as forfeited to the government, the sole object of the suit is to ascertain

whether the seizure be rightful, and the forfeiture incurred or not."

Food and Drugs Act, §§ 3, 4, and 5 (Comp. St. §§ 8719–8721), make provisions for an examination of specimens of food and drugs offered for sale in unbroken packages in any state other than that in which they may have been manufactured or produced, and, if any of the provisions of the act have been violated, the Secretary of Agriculture shall certify the facts to the proper district attorney, with a copy of the results of analysis or examination, and it is made the duty of each district attorney "to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States without delay for the enforcement of the penalties." What are the penalties? The whole act has in view seizure, forfeiture, condemnation, and confiscation, and in that respect does not differ in the slightest from all other acts the court has examined, providing for seizure, forfeiture, condemnation, and confiscation under various admiralty and revenue and other laws of the United States.

Among the cases which may be examined with profit are United States v. 92 Barrels of Rectified Spirits, Fed. Cas. No. 15,892, 8 Blatch. 480; U. S. v. One Raft of Timber (C. C.) 13 F. 796; The Lewellen, Fed. Cas. No. 8,307, 4 Biss. 156; Hatch v. Steamboat Boston (D. C.) 3 F. 807; U. S. v. Winchester, 99 U. S. 372, 376, 25 L. Ed. 479; Clifton v. United States, 4 How. 242, 11 L. Ed. 957; Coffey v. U. S., 116 U. S. 427, 435, 6 S. Ct. 432, 29 L. Ed. 681; The Washington, Fed. Cas. No. 17,221; The Josefa Segunda, 10 Wheat. 312, 6 L. Ed. 329; Fideliter v. U. S., Fed. Cas. No. 4,755, 1 Sawy. 153; Dobbin's Distillery v. U. S., 96 U. S. 395, 396, 24 L. Ed. 637; The Bolina, Fed. Cas. No. 1,608; The Idaho (D. C.) 29 F. 187, 190; The Rio Grande, 23 Wall. 458, 23 L. Ed. 158; Miller v. U. S., 11 Wall. 268, 294, 295, 296, 20 L. Ed. 135; Windsor v. McVeigh, 93 U. S. 274, 278 et seq., 23 L. Ed. 914; In re Moore (D. C.) 66 F. 950.

In fact, in some of the cases in which the same rule was adopted, there was no provision for forfeiture or seizure of the property. The Lewellen, Fed. Cas. No. 8,307, 4 Biss. 156; Hatch v. Steamboat Boston (D. C.) 3 F. 807. Such a case was The Bolina, Fed. Cas. No. 1,608. Full authority is found in that case for a seizure by the district attorney, or under his authority, even if the statute had been silent on the subject, and in the opinion Mr. Justice Story said: "But if there had been no mode of prosecution provided, I should have had no doubt that an

information would have lain upon common-law principles."

[1] Under the Food and Drugs Act the steps provided are the same, and just as drastic in their results, as in any of the other cases. In the case under consideration "the sole object of the suit is to ascertain whether the seizure be rightful and the forfeiture incurred or not," just as much as in all of the other cases in which the statute expressly gives some officer the power to seize the offending article. It would serve no useful purpose to go at length into the many cases cited by counsel and found by the court, in which revenue laws, navigation laws, or laws providing for confiscation in times of war and rebellion, were under consideration. They all announce the same rule, that when it is sought to declare a forfeiture of goods for a violation of some law of the United States, and the proceeding is strictly in rem, the seizure must be made prior to the filing of the libel, and the libel must allege the fact.

[2] This conclusion is not to be affected by questions of punctuation. If the comma after the word "found" is omitted, the language will be found to contain all of the elements found in the other statutes considered in the cases referred to. If the comma is transposed, and put after the word "seized," then there could be no doubt that the intention of the statute was that the same proceeding should be had as in admiralty in cases providing for seizure. Punctuation may not be regarded in construing a statute. Cushing v. Worrick, 75 Mass. (9 Gray) 382; Martin v. Gleason, 139 Mass. 183, 29 N. E. 664. "But for the punctuation as it stands," says Judge Day in Hamilton v. Steamboat Hamilton, 16 Ohio St. 429, "there could be little doubt but that this was the meaning of the Legislature. Courts will, however, in the construction of statutes, for the purpose of arriving at the real meaning and intention of the law-makers, disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statute."

It cannot be that when, without the comma, or with the comma after the word "seized," the act would be in its operation in conformity with all similar legislation, that Congress, by putting the comma after the word "found," intended to change the whole course of established procedure. It is interesting to notice that Act March 3, 1807, c. 22, § 4 (2 Stat. 427), considered in The Josefa Segunda, 10 Wheat. 312, 6 L. Ed. 329, the language with respect to the property to be confiscated was: "Shall be liable to be seiz-

ed, prosecuted, and condemned * * * in the district where the said ship or vessel *may be found or seized.* * * * "

There are good reasons why, in such cases as this, the seizure should precede the libel. It will be observed that the offense may be committed while the article "is being transported, * * * or having been transported remains unloaded, unsold, or in original unbroken packages." Let a case be assumed in which the proper authorities have information that goods misbranded in violation of the act are on the cars in the Northern district of Ohio, en route to Dayton, in the Southern district. If the district attorney in the Northern district, apprised by the Secretary of Agriculture, after an examination, that certain goods are misbranded, files his libel within his jurisdiction, and by it seeks seizure of the article, it is very apparent that, long before the libel may be prepared and the warrant of arrest issued and served, the goods may be without the jurisdiction of the court, and the libel a futility. But if, on the other hand, the district attorney in the Northern district of Ohio, who causes a warrant of seizure, upon information lodged in the proper court, to issue, and thereupon the goods were seized in his district, can it be doubted that the court in the jurisdiction in which the seizure was made would acquire jurisdiction of the case?

Again, let it be assumed that the goods have arrived in Dayton and remained in the unbroken packages, and, being misbranded, are forfeited under the law, the district attorney for the Southern district of Ohio files his libel and a writ of seizure is issued. Let it be assumed that, before his libel is prepared and filed and the writ issued and served, the goods have been sold by the Dayton consignee and transported to a bona fide purchaser in the Northern district of Ohio, or in some other state, of what avail would the libel be then? The court could certainly not proceed to condemn and forfeit the misbranded article.

[3] It is an established rule that a proceeding in rem is notice to the world. Mankin v. Chandler, Fed. Cas. No. 9,030, 2 Brouck. 125, 127, Marshall, C. J. If the proceeding is not instituted until the libel is filed, then a bona fide purchaser has no notice, actual or constructive. It is easy to see how upon goods actually forfeited by a commission of the offense a lien to a bona fide purchaser might be put, or a sale made, which would render a libel seeking a forfeiture a vain thing. Under section 68 of the Internal Revenue Act of June 30, 1864 (13

Stat. 248), providing for the forfeiture of liquors and spirits, and the seizure of the same for violation of internal revenue laws, it was held that a factor's lien was protected, where the bona fides are unquestioned, if the lien was subsisting at the date of the seizure. U. S. v. 396 Barrels of Distilled Spirits, Fed. Cas. No. 16,504.

The purposes of the Food and Drug Act, and of seizures, condemnations, and forfeitures under it, are the same as the purposes of the other acts of the government seeking the enforcement of laws of the United States by seizure, condemnation, and forfeiture of the property and goods which by the laws are made contraband, and there seems to be no reason why the proceedings in this case should differ from the proceedings in cases of similar purport and intention. The demurrer on the first ground will be sustained.

(2) "Said libel is not properly verified by any person having knowledge of the facts."

The claim is that the proceedings of seizure and forfeiture are criminal in their nature, and that the warrant should be of the character contemplated by the Fourth Amendment to the Constitution, which reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." It is claimed that the probable cause must be supported by oath or affirmation of some one conversant with the facts, which must be submitted to the magistrate issuing the warrant, so that he may determine whether probable cause exists.

It was the opinion of Chief Justice Marshall that a proceeding in forfeiture of a vessel is a civil cause. The Vengeance, 3 Dall. 297, where he says at page 301 (1 L. Ed. 610): "We are unanimously of opinion that it is a civil cause; it is a process of the nature of a libel in rem, and does not, in any degree, touch the person of the offender." The same great authority expressed the same view in The Schooner Sally, 2 Cranch, 406, 2 L. Ed. 320, in The Samuel, 1 Wheat. 10, 4 L. Ed. 23, and in The Betsy and Charlotte, 4 Cranch. 443, 2 L. Ed. 673.

It is said by Mr. Justice Clifford in Dobbins' Distillery v. U. S., 96 U. S. 395, 399 (24 L. Ed. 637): "Cases arise, undoubtedly, where the judgment of forfeiture necessarily carries with it, and as part of the sentence, a conviction and judgment against the

person for the crime committed, and in that state of the pleadings it is clear that the proceeding is one of a criminal character; but where the information, as in this case, does not involve the personal conviction of the wrongdoer for the offense charged, the remedy of forfeiture claimed is plainly one of a civil nature, as the conviction of the wrongdoer must be obtained, if at all, in another and wholly independent proceeding."

This would seem to settle the question, but there is a long list of cases, beginning with Boyd v. U. S., 116 U. S. 616, 634, 6 S. Ct. 524, 29 L. Ed. 746, which hold that proceedings in seizure and forfeiture are so far criminal as to come within the meaning of the Fourth Amendment. Lees v. U. S., 150 U. S. 480, 14 S. Ct. 163, 37 L. Ed. 1150; Stone v. U. S., 167 U. S. 178, 187, 17 S. Ct. 778, 42 L. Ed. 127; State v. Chicago, B. & Q. R. Co. (C. C.) 37 F. 497, 500, 3 L. R. A. 554; State v. Day Land, etc. (C. C.) 41 F. 228, 230; U. S. v. Two Barrels of Whisky 96 F. 479, 482, 37 C. C. A. 518; Snyder v. U. S., 112 U. S. 217, 5 S. Ct. 118, 28 L. Ed. 697; Coffey v. U. S., 116 U. S. 434, 6 S. Ct. 432, 29 L. Ed. 681; Clifton v. U. S., 4 How. 242, 250, 11 L. Ed. 957.

The question in Boyd v. United States was whether or not, in an action in rem to establish a forfeiture of goods alleged to have been fraudulently imported without paying duties, an order of court, based on the fifth section of the act authorizing the proceeding, which required the claimants of the goods to produce a certain invoice in court for the inspection of the government attorney and to be offered in evidence by him, was constitutional, or not. Section 5 was held to be unconstitutional. Mr. Justice Bradley, at page 634 (6 S. Ct. 534), says: "As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment."

The propriety of these views has not been questioned, so far as this court, after much research, has been able to ascertain, and they are summed up by Mr. Justice Harlan in Hepner v. U. S., 213 U. S. 103, 111, 29 S. Ct. 474, 478 (53 L. Ed. 720, 27 L. R. A. [N. S.] 739, 16 Ann. Cas. 960) in this language: "In the latter case [Boyd v. U. S.] it was adjudged that penalties and forfeitures incurred by the commission of offenses against the law are of such a quasi criminal nature that they come within the reason of criminal proceedings for the purposes of the Fourth Amendment of the Constitution and of that part of the Fifth Amendment declaring that no person shall be compelled in any criminal case to be a witness against himself."

Some light is thrown upon the subject by what is said in Smith v. Maryland, 19 How. 71, 76, 15 L. Ed. 269. In that case the question was whether a law of Maryland, enacted for the protection of oysters in waters covering lands in the state, afforded valid cause for seizing a licensed and enrolled vessel of the United States and interrupting its voyage, and pronouncing for its forfeiture. As bearing upon the subject under discussion Mr. Justice Curtis said: "The objection that the law in question contains no provision for an oath on which to found the warrant of arrest of the vessel cannot be here maintained. So far as it rests on the Constitution of the state, the objection is not examinable here, under the twenty-fifth section of the Judiciary Act. If rested on that clause in the Constitution of the United States which prohibits the issuing of a warrant, but on probable cause, supported by oath, the answer is that this restrains the issue of warrants only under the laws of the United States, and has no application to state process." See, also, what is said by Mr. Justice Curtis in Murray's Lessee v. Hoboken, etc., Co., 18 How. 272, 15 L. Ed. 372, bottom page 285, and see the opinion of Attorney General Nelson (1843): "The protection guaranteed is not against all seizures; it is against unreasonable seizures, can be made only upon reasonable cause, and, when authorized, the evidence of its reasonableness is to be furnished by oath or affirmation." 4 Op. Attys. Gen. 213.

[4] The question in every case of seizure is whether the seizure was justified or not, and the proceeding to ascertain that fact is a civil proceeding, but a seizure of goods is in effect a proceeding against the owner (Boyd v. U. S., 116 U. S. 637, 6 S. Ct. 524, 29 L. Ed. 746; The City of Norwich, 118 U.

S. 468, 504, 6 S. Ct. 1150, 30 L. Ed. 134), and hence criminal in nature, and the matter is brought within the meaning and operation of the Fourth Amendment, under which it is a no less serious offense to seize goods than it is to seize the person without a warrant under oath founded upon probable cause.

Power is given Congress by the Constitution to regulate commerce and to pass all laws necessary and proper to carry that power into effect. The Food and Drugs Act is sanctioned by that power. But in carrying out that power regard must be had to other provisions of the Constitution, and if a seizure of goods is necessary it can only be made in the way prescribed by the Fourth Amendment. See remarks of Judge Drummond in Mason v. Rollins, Fed. Cas. No. 9,-252.

In all criminal cases in which a warrant is issued for arrest, probable cause must be shown by the affidavit of some one who has knowledge of the facts. This may be regarded as settled. The rule is laid down by Justice Bradley, on the circuit, in the Rule of Court, Fed. Cas. No. 12,126. He says: "No warrant shall be issued by any commissioner of this court for the seizure or arrest of any person charged with a crime or offense against the laws of the United States upon mere belief, or suspicion of the person making such charge, but only upon probable cause, supported by oath or affirmation of such person, in which shall be stated the facts within his own knowledge constituting the grounds for such a belief or suspicion." See, also, United States v. Tureaud (C. C.) 20 F. 621, 623; U. S. v. Polite (D. C.) 35 F. 59; Erwin v. U. S. (D. C.) 37 F. 470, 489, 2 L. R. A. 229; In re Gourdin (D. C.) 45 F. 842, 843; In re Dana (D. C.) 68 F. 895; Johnston v. U. S., 87 F. 187, 30 C. C. A. 612.

Historically, arbitrary seizure is one of the great grievances against despotic power. In these days the reasons for the protection of persons and property, and the fact that they are protected, are almost forgotten in the paucity of attacks upon them, yet how that protection was wrung from reluctant tyranny must always be borne in mind, and no act can be sanctioned which would tend to weaken the great safeguard of our liberties, and permit at some time encroachments thereon which might seem justified by authority of law or by judicial interpretation. Boyd v. United States, 116 U. S. 616, 635, 6 S. Ct. 524, 29 L. Ed. 746. In many cases of seizure discussed in this opinion the fact does not appear whether a warrant was issued

5 F.(2d)—62

prior to the seizure, nor was the form of the warrant disclosed; but in the opinion of this court, considering the seriousness of governmental seizures of the private property of a citizen and the requirements of the Fourth Amendment, it would seem that the affidavit preceding a warrant in proceedings in their nature criminal for the seizure of goods should be made by some one cognizant of the facts. Then upon the issuing of the warrant and the seizure of the goods the district attorney may proceed "to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States without delay for the enforcement of the penalties," as provided by the act.

It is argued by the district attorney that "even the Constitution must be reasonably construed, and it was never intended or decided that the court should examine a case in advance of issuing process for seizure for condemnation, and should afterwards have to try the case on the same evidence to determine whether the case was actually made out." In answer to this it may be said that the proceedings resulting in the issuing of the warrant are altogether ex parte. There is no trial. There is an affidavit presented by some one who claims to be conversant with the facts, setting forth facts which would show probable cause. The demurrer on its second ground is well taken.

[5] (3) "It does not appear, in and from the averments contained in said libel, that the goods therein mentioned are still subject to the provisions of the Act of Congress of June 30, 1906, in said libel invoked."

From sections 2 and 10 it may be gathered that the offense charged is the shipping of the contraband article from one state into another, or, having received it, to deliver or offer to deliver the unbroken packages for pay or otherwise, and that a seizure and forfeiture may be had, first, when the article is being transported from one state to another for sale; and, second, having been so transported, remains unloaded, unsold, or in the original unbroken packages.

It may well be that the Prescription Products Company was the owner of these unbroken packages, or had them in its possession for the purpose of being used, manufactured, sold, and consumed as drugs, without the packages having been transported for sale or received for sale. Of course, if the original packages were to be used and manufactured, Congress had no power to legislate respecting them, and if they were to be sold after manufacture then the original packages must necessarily have been

broken, and then the law would have to look to the labels on the original packages into which the manufactured product had been put, and only then if it were shipped from Dayton into some other state.

If the words "used and manufactured" are rejected as surplusage, and the illegal conduct is restrained to the words "sold and consumed as drugs," it may be said that the owner or possessor of these original packages could do as he pleased with them if they were not transported into the state to be sold in the original packages. They may have been, as they probably were, transported to be manufactured, as in United States v. Sixty Five Casks Liquid Extracts (D. C.) 170 F. 449, 456, and then, when the manufactured product is sold, it must bear the proper label, if labeled at all. These casks may have been transported for purposes of experiment, and, not being used for such purposes, were sold by the person receiving them to the present owner or possessor. So far as it appears by the label, years may have elapsed since the transportation for some other purpose than for sale in the original packages, and it may be that during all that time state taxes have been paid by the owner or possessor. Indeed, the packages may have been in the ownership and possession of the claimant before the Food Act was passed, and, if so, could not come within its operation. Article 1, § 9, cl. 3, Constitution of the United States. The court is of opinion that no forfeiture can be declared under the libel as drawn, and the third ground of demurrer will be sustained.

(4) "Said libelant has not, in and by its said libel, made or stated such a case as entitles the said libelant to the relief therein prayed, inasmuch as the said Act of June 30, 1906, has no application to shipments of the character of the said shipments set forth in said libel."

Under the provisions of section 8, the term "misbranded" applies to drugs, "the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contain-ed therein which shall be false or misleading in any particular," or (subdivision second) "if the package fail to bear a statement on the label of the quantity or proportion of any alcohol. * * * "

The legend "Prescription Products Company, Dayton, Ohio, S. 59884, P. D. Co. No. (1)," is not intelligible. It may be a shipping direction, or it may have been put on the packages by the claimant for purely innocent purposes of its own. As it reads, it cannot be said to be a statement, etc., of the article in the casks, or of the ingredients and substances contained in them. It may be that apt words by way of inducement or innuendo would bring the legend within the language of the law, and show that it was a statement, etc., false or misleading in some particular. It may be that, when interpreted, it would show a full compliance with the law.

[6, 7] The law does not require any label, except by inference, and by no means necessary inference. A man cannot be convicted of a criminal offense or his property forfeited by inference. The effect of the provision of the law is that no original packages of drugs shall be introduced into one state from another for purposes of sale in the original packages, the label of which is misleading or false. If there is no label, there is no misrepresentation. If the label is unintelligible, it is no description of the contents of the package, and can deceive nobody.

But it would be a too great refinement of language to say that these marks are not labels. The casks certainly are labeled as described. It may be that the marks, when interpreted, would show the required content of alcohol; but the label should make that fact intelligible. Since the casks are labeled, the required information should appear clearly on the label, whether it is a separate paper pasted on the cask or branded upon it. Inasmuch, however, as the libel does not charge that the packages were transported into the state for sale, this ground, also, for the demurrer must be sustained.

Order accordingly.